STATE OF NORTH CAROLINA v. BERNARD WILLIAM JONES, Defendant

No. COA00-1146

(Filed 2 October 2001)

## 1. Confessions and Incriminating Statements— invocation of rights to silence and counsel–detective's testimony—no plain error

The trial court did not commit plain error in a trafficking in heroin case by allowing a detective's testimony regarding the fact that defendant had invoked his right to remain silent and to have counsel present during questioning, because: (1) defendant failed to show a different result would have been reached but for the error when there was evidence that a detective saw defendant passing a baggie to his coparticipant, the coparticipant testified that defendant passed him a plastic bag full of heroin, and the detective testified that a plastic bag full of heroin was found on the coparticipant; and (2) the admission of the testimony did not result in a miscarriage of justice or denial of a fair trial.

## 2. Constitutional Law— effective assistance of counsel—failure to object

A defendant was not denied effective assistance of counsel in a trafficking in heroin case based on his counsel's failure to object to a detective's testimony regarding the fact that defendant had invoked his right to remain silent and to have counsel present during questioning, because defendant has failed to show that there is a reasonable probability that the result of the proceedings would have been different but for his counsel's failure to object.

## 3. Drugs— trafficking in heroin—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charge of trafficking in heroin under N.C.G.S. § 90-95(h)(4) based on alleged insufficient evidence regarding the amount of heroin, because there is substantial evidence that

**STATE v. JONES**

[146 N.C. App. 394 (2001)]

the large bag of heroin attributed to defendant contained at least 4.0 grams exclusive of its packaging or weighing papers.

Appeal by Defendant from judgment entered 4 May 2000 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 22 August 2001.

*Attorney General Roy Cooper, by Mark J. Pletzke, Assistant Attorney General, for the State.*

*Clifford, Clendenin, O'Hale & Jones, L.L.P., by Walter L. Jones, for defendant-appellant.*

HUDSON, Judge.

Defendant appeals his convictions for trafficking in heroin by transportation and trafficking in heroin by possession. We overrule all assignments of error.

The evidence presented at trial that is pertinent to this appeal is as follows. On 10 August 1999, Defendant was contacted by Don Ray Hicks, Jr., a heroin addict who had purchased drugs from Defendant on many occasions over the preceding two years. Although Hicks had no money, he hoped to obtain heroin from Defendant on credit. Defendant and Hicks arranged to meet, and Defendant picked Hicks up in his car. Defendant sold Hicks on credit a small bag containing heroin ("the small bag"); the bag was made by heating and compressing the corner of a ziploc bag.

While Defendant and Hicks were driving, Defendant's car was spotted by Detective Kyle Evan Shearer of the Vice/Narcotics Unit of the Greensboro Police Department. Detective Shearer's suspicions were aroused by the fact that Defendant appeared to show him a lot of attention as Detective Shearer drove by Defendant's vehicle. Detective Shearer noted Defendant's license plate number and had his secretary run it. Detective Shearer's secretary discovered that Defendant's license had been suspended.

Defendant had noticed Detective Shearer, who was not in uniform and was driving an unmarked vehicle, and suspected that he was a policeman. As Defendant drove away from the area, Detective Shearer followed him; Defendant became nervous, began to speed, and his driving grew erratic. Defendant then ceased speeding, but made several lane changes without signaling. According to Hicks, Defendant was attempting to determine whether Detective Shearer

was following him; Defendant concluded that Detective Shearer was a policeman.

Detective Shearer radioed for assistance because he was driving an unmarked car and was not in uniform, and Officer Hafkemeyer responded to the call. Defendant turned abruptly into an IHOP parking lot and stopped the car. Detective Shearer pulled up next to Defendant and identified himself as a police officer. Detective Shearer observed Defendant attempting to shove something made of baggie-type material into Hicks' hand. According to Hicks, Defendant forced him to take a bag of heroin and told him to go into the bathroom and flush it. This bag ("the large bag") was later determined to contain nine smaller baggies of heroin. Hicks left the car, followed by Officer Hafkemeyer. Hicks put the large bag that Defendant had given him into his pocket as he walked briskly into the IHOP. Hicks was carrying the small bag of heroin in his hand.

After arresting Defendant for driving while his license was revoked or suspended, Detective Shearer entered the IHOP, where he found Officer Hafkemeyer subduing Hicks on the floor. When Hicks was brought to his feet, Detective Shearer noticed a small heat-sealed baggie containing an off-white powder lying on the floor. Hicks admitted that the powder was heroin. Detective Shearer searched Hicks and found a sandwich bag containing nine individual baggies of off-white powder and a syringe for injecting heroin.

Hicks was charged with possession of heroin. At the police station, Hicks waived his *Miranda* rights and gave a written statement. Hicks later pled guilty to the possession offense pursuant to a plea agreement requiring his truthful testimony against Defendant. After Defendant was informed of his rights, he requested an attorney; although Defendant told officers that he wanted to make a statement, Detective Shearer explained that he could not talk with Defendant until Defendant's attorney arrived. Defendant made a spontaneous statement, however, claiming that the drugs belonged to Hicks.

Detective Shearer weighed the large bag of heroin and determined that it weighed 4.7 grams, including the packaging. As a result, he charged Defendant with trafficking in heroin. Agent H.T. Raney of the State Bureau of Investigation later determined that the large bag contained a total of 4.04 grams of heroin.

[1] In his first assignment of error, Defendant argues that the trial court erred by allowing Detective Shearer's testimony regarding the

fact that Defendant had invoked his right to remain silent and to have counsel present during questioning. Specifically, Defendant objects to the following colloquy between the prosecutor and Detective Shearer:

Q. Let me show you what has previously been marked as State's Exhibit 15, and I'll ask you whether or not this is the document that you used for Mr. Jones?

A. This is the exact same document. It's a Greensboro Police Department Advisement of Rights and Waiver Form, and, uh, this indicates, and as I recall, I advised Mr. Jones of his rights. He verbally answered "yes" to all his rights, stating he understood his rights, and he placed his signature, which is Bernard Jones.

Q. And you recognize State's 15 to be the same document and in the same condition as when it was completed back on the date of the arrest?

A. Yes, it is.

. . . .

Q. Tell me what happened after that.

A. Mr. Jones, as I said, he carried himself well. He understood his rights. He stated he wanted an attorney before he said anything to us. Uh, however, then he would sit there and say he wanted to tell us what happened. He repeatedly said he wants to tell us what had happened, but he wants an attorney. Uh, I explained to him, since he already invoked his rights wishing an attorney, you know, that I wasn't going to talk to him.

. . . .

Q. Flipping to the last page, then, of your report, tell me about the exchange between you and Mr. Jones.

A. Mr. Jones?

Q. Yes.

A. Mr. Jones, like I said, he continued to say that he wanted to talk to us but he wanted an attorney. I advised him that there was probably nothing else we could talk about, and as I was going out the door, uh, he basically said that, uh, let's see where I can start here. That he, uh, wanted to speak to us with an attorney. However, Mr. Jones continued to state that he wanted to tell me

what had happened, and that all the dope that was found out there belonged to the white boy. And that was basically the gist of what he had said in the interview room. That was the extent of it.

. . . .

Q. And his demeanor from there, then?

A. Like I say, he was very polite. Uh, he kept saying he wanted to talk to me, but he had already told me he wanted an attorney and, you know, once they say that, there's no reason for us to continue on with any conversation.

Defendant concedes that his counsel did not object at trial to the admission of this testimony. Because counsel failed to object to the testimony at trial, we review any error under a plain error standard. *See State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997) (applying plain error standard even when alleged error was constitutional).

Our Supreme Court has held that the State may not introduce at trial evidence that a defendant exercised his constitutional rights. *See id.* ("Defendant is correct in her assertion that the exercise of her constitutionally protected rights to remain silent and to request counsel during interrogation may not be introduced as evidence against her by the State at trial."); *State v. Elmore*, 337 N.C. 789, 792, 448 S.E.2d 501, 502 (1994) ("The defendant correctly points out that a defendant's exercise of his constitutionally protected rights to remain silent and to request counsel during interrogation may not be used against him at trial."); *State v. Ladd*, 308 N.C. 272, 283-84, 302 S.E.2d 164, 171-72 (1983) (holding that the trial court erred in admitting into evidence a defendant's statement that included invocation of his right to counsel).

Citing *State v. Williams*, 305 N.C. 656, 674, 292 S.E.2d 243, 254-55, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), the State argues that the admission of the testimony here was not error because the testimony was not "used to infer guilt." In *Williams*, a police officer testified that he had advised the defendant of his rights, then indicated that he wished to discuss a robbery and shooting with the defendant; the officer further testified that the defendant denied committing the crime and then asked for a lawyer, at which point the officer's questioning stopped. *See id.* at 673, 292 S.E.2d at 254. Our Supreme Court distinguished these facts in *Williams* from cases in which a defendant's silence in the face of an accusation is used to

imply guilt, and concluded that the statements at issue were admissible because the defendant's request for a lawyer was not used by the State to infer guilt, and the defendant's statements were made voluntarily after a knowing and intelligent waiver of his rights. *See id.* at 674, 292 S.E.2d at 254-55. *Williams* preceded *Ladd*, however, in which our Supreme Court held that the admission of a defendant's statement in which he invoked his right to counsel was error. *See Ladd*, 308 N.C. at 284, 302 S.E.2d at 172. Thus, to the extent that *Williams* holds that a defendant's statement in which he invokes his right to counsel may be admissible, we find that it has been superseded by the holding in *Ladd*.

The State also asserts that the testimony at issue here should be admissible in order to show that Defendant knowingly and intelligently waived his rights in speaking with Detective Shearer. In support of this assertion, the State cites *State v. White*, 298 N.C. 430, 436-37, 259 S.E.2d 281, 285 (1979), and *State v. Crawford*, 83 N.C. App. 135, 138, 349 S.E.2d 301, 303 (1986), *cert. denied*, 319 N.C. 106, 353 S.E.2d 115 (1987). However, in these cases, the issue was whether statements made after the defendant had waived his rights were admissible, not whether a defendant's statements invoking his rights were admissible. Indeed, in *White* and *Crawford*, evidence regarding whether the defendants had knowingly and intelligently waived their rights was introduced on *voir dire*, not before the jury, and hence, the issue before us in this case was not presented. *See White*, 298 N.C. at 437, 259 S.E.2d at 286; *Crawford*, 83 N.C. App. at 136, 349 S.E.2d at 301.

Although we agree with Defendant that the admission of the testimony was error, *see Ladd*, 308 N.C. at 284, 302 S.E.2d at 172, Defendant has failed to show that it was plain error. Under the plain error standard, Defendant must show "(i) that a different result probably would have been reached but for the error or (ii) that the error was so fundamental as to result in a miscarriage of justice or denial of a fair trial." *Bishop*, 346 N.C. at 385, 488 S.E.2d at 779. Defendant has not met this burden. There was compelling evidence of Defendant's guilt introduced at trial, including Detective Shearer's testimony that he saw Defendant passing a baggie to Hicks; Hicks' testimony that Defendant passed him a plastic bag full of heroin; and Detective Shearer's testimony that a plastic bag full of heroin was found on Hicks. We conclude that it is not probable that a different result would have been reached had the testimony of Detective Shearer regarding Defendant's invocation of his rights been excluded.

We also conclude that the admission of the testimony did not result in a miscarriage of justice or denial of a fair trial. Accordingly, this assignment of error is overruled.

[2] In his second assignment of error, Defendant argues that he was denied effective assistance of counsel because his counsel failed to object to the testimony at issue in the first assignment of error. A defendant claiming ineffective assistance of counsel must demonstrate that his counsel's performance was defective and that this defective performance prejudiced the defense. *See State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985). To show prejudice a defendant must show there is a "reasonable probability" that "absent counsel's deficient performance, the result of the proceeding would have been different." *State v. Moorman*, 320 N.C. 387, 399, 358 S.E.2d 502, 510 (1987). Here, based on the evidence discussed above regarding the first assignment of error, we conclude that Defendant has failed to show that there is a reasonable probability that the result of the proceedings would have been different but for his counsel's failure to object to Detective Shearer's testimony. Accordingly, this assignment of error is overruled.

[3] In his third and final assignment of error, Defendant argues that the trial court erred in denying his motion to dismiss the charges of trafficking in heroin due to insufficiency of the evidence regarding the amount of heroin that was attributed to Defendant. Section 90-95(h)(4) of the North Carolina General Statutes provides that "[a]ny person who sells, manufactures, delivers, transports, or possesses four grams or more of opium or opiate, or any salt, compound, derivative, or preparation of opium or opiate . . ., including heroin, or any mixture containing such substance, shall be guilty of a felony which felony shall be known as 'trafficking in opium or heroin.' " N.C. Gen. Stat. § 90-95(h)(4) (Supp. 2000). Based on the testimony of the State's expert witness, Agent H.T. Raney, Defendant contends that the 4.04 grams reported as the weight of the heroin in the large bag, which was attributed to him, included the packaging and/or weighing papers, so that the evidence was insufficient to show that the heroin attributed to Defendant weighed at least 4.0 grams.

On review of the trial court's denial of Defendant's motion to dismiss for insufficiency of the evidence on the drug amount, we must review the evidence introduced at trial in the light most favorable to the State to determine if there is " 'substantial evidence' " of this element of the offense. *State v. Baldwin*, 141 N.C. App. 596, 604, 540

S.E.2d 815, 821 (2000) (quoting *State v. McKinnon*, 306 N.C. 288, 298, 293 S.E.2d 118, 125 (1982)). "Substantial evidence is that which a reasonable juror would consider sufficient to support the conclusion" that this element of the offense has been proven. *Id.*

After a careful examination of Agent Raney's testimony, we conclude that there is substantial evidence that the large bag of heroin attributed to Defendant contained at least 4.0 grams, exclusive of its packaging or weighing papers. Agent Raney was asked on direct examination whether his analysis reflected the "total contents" of the nine smaller bags, and he answered in the affirmative, verifying that the total contents, which was heroin, weighed 4.04 grams. Agent Raney explained that the powder from each of the nine bags was removed from the smaller plastic corner packets and combined to obtain a total weight. During defense counsel's cross-examination, after Agent Raney explained that he combined the contents of all nine smaller bags in the same weighing tray to obtain a total weight, defense counsel asked, "All of the glassine envelopes; is that what you're saying?", and Agent Raney clarified, "The contents of each one of those; yes, sir." We believe that on the basis of this testimony, a reasonable juror would have concluded beyond a reasonable doubt that the large bag contained at least 4.0 grams of heroin, exclusive of packaging or weighing papers. Accordingly, this assignment of error is overruled.

No prejudicial error.

Judges WALKER and McGEE concur.