STATE OF NORTH CAROLINA v. ANTHONY ROCHELLE PARKS

No. COA01-247

(Filed 19 February 2002)

### 1. Evidence— testimony of deputy regarding defendant's inculpatory statements—motion to suppress

The trial court did not abuse its discretion in a trafficking in cocaine and conspiracy to traffic in cocaine case by summarily denying defendant's motion to suppress the testimony of a deputy regarding defendant's statements without conducting a voir dire, because: (1) the State complied with N.C.G.S. § 15A-903 by divulging the substance of defendant's statements as soon as that information was discovered through further questioning of the deputy; (2) the information provided by the reports which the State disclosed in advance of twenty working days prior to trial put defendant on notice that the State would attribute statements to defendant; (3) defendant's motion was untimely since he moved to suppress the deputy's testimony only after the deputy had testified about defendant's statements without objection; and (4) defendant's statements were not made in violation of his Miranda rights since defendant's inculpatory statements were not made during a custodial interrogation.

### 2. Constitutional Law— right to remain silent—mentioning defendant's invocation of right

Although the trial court erred in a trafficking in cocaine and conspiracy to traffic in cocaine case by allegedly allowing the State to elicit testimony regarding defendant's invocation of his right to remain silent and his refusal to be interviewed, defendant was unable to show there was plain error because: (1) there was testimony of officers who observed defendant throughout the transaction; (2) a witness identified defendant as the person from whom the witness had obtained the cocaine for an undercover officer on several occasions; (3) defendant made various voluntary inculpatory statements to a deputy, including that defendant wanted to help himself out of trouble, that defendant could show the deputy where defendant had gone in the woods and where defendant had put the jar that had contained the cocaine, and that defendant had thrown the money given to him by the witness out of defendant's car window when defendant realized that he was being followed by law enforcement officers; (4) defendant

retrieved the jar which appeared to contain cocaine residue; (5) at the time defendant invoked his right to remain silent, he had already inculpated himself through prior statements to the officers; and (6) the prosecutor did not imply that defendant's invocation of his right to remain silent was an admission of guilt.

Appeal by defendant from judgments entered 24 September 1999 by Judge Gregory A. Weeks in Wake County Superior Court. Heard in the Court of Appeals 22 January 2002.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General W. Dale Talbert, for the State.*

*Ligon and Hinton, by Lemuel W. Hinton, for defendant-appellant.*

HUNTER, Judge.

Anthony Rochelle Parks ("defendant") appeals from convictions of trafficking in cocaine by possession, trafficking in cocaine by delivery, and conspiracy to traffic in cocaine. We hold there was no prejudicial error in defendant's trial.

The State's evidence tended to establish that in May 1998, Officer Lance Anthony of the Wendell Police Department was working in his capacity as an undercover drug agent for the Wake County Drug Task Force. Officer Anthony was introduced to Robert Gullie, from whom he purchased several small amounts of cocaine. On 12 June 1998, Officer Anthony told Gullie he wished to buy a more substantial amount of powder cocaine, approximately one or two ounces. Gullie took Officer Anthony to the home of Ronald Jones. Jones told Officer Anthony to return in one hour for the drugs. Officer Anthony gave Jones $2,500.00, and returned in an hour to pick up two ounces of cocaine.

Jones testified at trial that on this occasion, he obtained the two ounces of cocaine from defendant in a residence off Oak Ridge Duncan Road. Jones testified that when he arrived at the residence with the $2,500.00, defendant went out the back door of the residence and returned a few minutes later with the cocaine. Jones also testified that he had purchased cocaine from defendant at this residence before, and that each time, defendant would leave the residence through the back door and return minutes later with the drugs.

On 17 June 1998, Officer Anthony again arranged through Gullie to purchase two more ounces of cocaine through Jones. Again, Jones instructed Officer Anthony to come back for the drugs in one hour. Officer Anthony complied. When Jones thereafter left his residence, law enforcement officers followed. Jones was observed driving to a residence off Oak Ridge Duncan Road. Jones testified that on this occasion, as on 12 June 1998, he met defendant at the Oak Ridge Duncan Road residence and gave defendant Officer Anthony's money, whereupon defendant left the residence through the back door and returned momentarily with two ounces of cocaine. The same chain of events occurred on 17 July 1998. Officer Anthony and Gullie met with Jones, who took Officer Anthony's money. Jones testified that defendant gave him cocaine in exchange for the money. Officer Anthony and Gullie returned later to pick up two ounces of cocaine.

On 22 July 1998, the Wake County Drug Task Force planned a "buy/bust" in which the officers planned to arrest the participants in the drug transaction at its conclusion. Law enforcement officers conducted surveillance throughout the transaction on Officer Anthony, Gullie, Jones, and defendant. Law enforcement officers, including Deputy Duncan Jaggers of the Harnett County Sheriff's Office, monitored the area around the Oak Ridge Duncan Road residence. Officer Anthony commenced the "buy/bust" by bringing $5,100.00 to Gullie and telling him he wished to buy four ounces of cocaine. Officer Anthony and Gullie met with Jones, gave him the money, and then returned to Gullie's residence. Jones testified that he contacted defendant on his beeper, and defendant confirmed that he could supply the drugs. Jones drove to the Oak Ridge Duncan Road residence and met with defendant. Jones testified defendant left the house momentarily and returned with four baggies containing four ounces of cocaine.

Deputy Jaggers testified that during the time Jones was meeting with defendant in the residence, he observed defendant leave the house alone and walk into a wooded area at the side of the house. Deputy Jaggers observed defendant enter the wooded area, kneel down, and bend over to where he could not see what defendant was doing. Deputy Jaggers testified that when defendant was bending down, he heard the sound of a "Mason jar lid when [it] get[s] rusted and [it's] been outside awhile, when you open [it] up how [it] squeak[s] when you open [it]." After hearing this noise, Deputy Jaggers observed defendant stand up, exit the woods, walk to the left

side of the house, and kneel down again. Although Deputy Jaggers could not see defendant when he knelt down, he heard the same noise of a rusted "Mason jar" opening when defendant knelt down. When defendant stood, Deputy Jaggers did not see anything in his hands, but stated there "was an extremely large bulge in his right front pocket of [his] pants." Defendant then re-entered the house. Jones testified that he then took the cocaine, and delivered it to Gullie and Officer Anthony at Gullie's house.

Approximately two or three minutes after Jones left the residence, defendant exited the house and got into a vehicle. Deputy Jaggers observed defendant pulling out of the driveway, and alerted the "car team" of officers that defendant was leaving. Defendant was apprehended shortly thereafter, and was returned to the Oak Ridge Duncan Road residence. Deputy Jaggers identified defendant as the person he had seen leave the residence moments before. Deputy Jaggers testified that defendant then initiated a conversation with him. When Deputy Jaggers approached defendant to identify him to the other officers, defendant addressed Officer Jaggers by name. Deputy Jaggers testified he did not recognize defendant from any prior time, but that defendant stated that he knew him. Deputy Jaggers testified that defendant then said to him, "[w]hat kind of trouble am I in?" Deputy Jaggers responded that he did not know. Defendant then continued to state to Deputy Jaggers that he did not "do that kind of stuff." Deputy Jaggers did not respond.

The law enforcement officers then searched the grounds and the residence after receiving a warrant. Deputy Jaggers testified that he was walking into the house when defendant "called [him] over" and initiated a conversation with him. Deputy Jaggers testified that defendant continued to ask him what kind of trouble he was in, to which Deputy Jaggers finally responded, "you're in a lot of trouble right now." Defendant then said, "what can I do to help myself?" Deputy Jaggers responded that he thought defendant had requested an attorney, and therefore he would not be able to talk to him. Defendant then said, "[n]o, I want to help myself now while I can." Deputy Jaggers verified that defendant wanted to speak without an attorney present. Defendant continued to ask how he could help himself, and Deputy Jaggers replied that defendant could show him where he had gone in the woods.

Defendant showed Deputy Jaggers where he had gone in the woods, but stated there was nothing there anymore. Deputy Jaggers observed a hole approximately eighteen inches deep in the ground.

Defendant stated there had been a jar in the hole, but that he had taken the jar and placed it at the side of the house. Defendant took Deputy Jaggers to the side of the house where he moved some dirt and retrieved the jar, which contained what appeared to be cocaine residue. Deputy Jaggers then asked defendant what he had done with the money Jones had given him in exchange for the drugs. Defendant responded that he threw it out his car window when it appeared to him that he was being followed by law enforcement, and he volunteered to show Deputy Jaggers where he had thrown the money.

Defendant was tried on four counts of trafficking in cocaine by possession, four counts of trafficking in cocaine by delivery, and four counts of conspiracy to traffic in cocaine. The trial court dismissed three counts of conspiracy to traffic in cocaine, but submitted the remaining charges to the jury. Defendant did not testify at trial, but put on evidence of his good character and the fact that no drugs or money were recovered during the search of the Oak Ridge Duncan Road residence. On 24 September 1999, the jury returned guilty verdicts on three counts of trafficking in cocaine by possession, three counts of trafficking in cocaine by delivery, and one count of conspiracy to traffic in cocaine. Defendant was sentenced to two consecutive terms of thirty-five to forty-two months in prison. He appeals.

Defendant brings forth two arguments on appeal: (1) the trial court erred in summarily denying his motion to suppress the testimony of Deputy Jaggers regarding defendant's statements without granting *voir dire*; and (2) the trial court erred in allowing the State to elicit testimony that defendant refused to be interviewed after he was placed in police custody and apprised of his constitutional rights.

[1] Defendant first argues the trial court erred in summarily denying his motion to suppress Deputy Jagger's testimony about the statements defendant made to him in the course of the investigation at Oak Ridge Duncan Road. Defendant moved to suppress the testimony at trial after it had been introduced without objection. A motion to suppress "must state the grounds upon which it is made." N.C. Gen. Stat. § 15A-977(a) (1999). A judge "may summarily deny the motion to suppress evidence if . . . [it] does not allege a legal basis for the motion." N.C. Gen. Stat. § 15A-977(c). " '[T]he decision to deny summarily a motion which fails to set forth adequate legal grounds is vested in the sound discretion of the trial court.' " *State v. Colbert*, 146 N.C. App. 506, 508, 553 S.E.2d 221, 223 (2001) (citation omitted).

STATE v. PARKS

[148 N.C. App. 600 (2002)]

Here, the basis of defendant's motion to suppress was two-fold: (1) the State failed to timely disclose within twenty working days of trial the substance of the statements made by Deputy Jaggers which the State intended to introduce; and (2) defendant's statements were made in violation of his *Miranda* rights. A defendant generally may only move to suppress evidence prior to trial. N.C. Gen. Stat. § 15A-975(a) (1999). However, a defendant may move to suppress for the first time during trial where "the State has failed to notify the defendant's counsel . . . sooner than 20 working days before trial, of its intention to use the evidence, and the evidence is . . . a statement made by a defendant." N.C. Gen. Stat. § 15A-975(b).

Defendant made a written request for disclosure on 5 November 1998 in which he requested that the State divulge the substance of any oral statement made by defendant which the State intended to offer at trial. In response, the State provided a written report prepared by Special Agent Lacy Pittman of the State Bureau of Investigation ("SBI"). The report was a summary of Agent Pittman's telephone conversation with Deputy Jaggers following the 22 July 1998 "buy/bust," regarding the events of that day. Deputy Jaggers testified that he only gave Agent Pittman a "brief synopsis of what took place." Agent Pittman's notes from the conversation recounted that defendant retrieved the glass jar which appeared to contain cocaine residue, but the notes did not contain any information on the statements defendant made to Deputy Jaggers. The State also produced a written report prepared by SBI Special Agent Greg Tart concerning his surveillance observations from 22 July 1998. Agent Tart's report included information that defendant expressed that he knew Deputy Jaggers, and that defendant admitted to having thrown the money he obtained from Jones out of his car.

Deputy Jaggers was interviewed by the State on 1 September 1999 in preparation for trial. The State maintains that this was the first time Deputy Jaggers expressed in detail the extent of defendant's inculpatory statements, and that the State immediately informed defense counsel by telephone, followed by a written report on 3 September 1999, of the statements and the State's intent to use them. Deputy Jaggers was interviewed by Agent Pittman a few days later, at which time Deputy Jaggers provided even more detail about his surveillance activities on 22 July 1998, and the statements defendant made to him. Defense counsel was also provided with this information, although less than twenty working days before trial.

In denying defendant's motion, the trial court found that the State notified defendant in a timely fashion as soon as the details of defendant's statements became known to the State. Under N.C. Gen. Stat. § 15A-903 (1999), upon a motion of a defendant, the State must divulge in writing or recorded form, the substance of any of the defendant's oral statements relevant to the subject matter of the case "within the possession, custody or control of the State, the existence of which is known to the prosecutor or becomes known to him prior to or during the course of trial." N.C. Gen. Stat. § 15A-903(a)(2). The record reflects that the State complied with N.C. Gen. Stat. § 15A-903 in divulging the substance of defendant's statements as soon as that information was discovered through further questioning of Deputy Jaggers.

The trial court also found that the information provided by the reports which the State disclosed in advance of twenty working days prior to trial put defendant on notice that the State would attribute statements to defendant. Those reports included information that defendant retrieved the glass jar which appeared to contain cocaine residue, and that defendant admitted to having thrown away the money he received in exchange for the drugs. In addition, the trial court determined defendant's motion was not timely. Defense counsel moved to suppress Deputy Jagger's testimony only *after* he had testified about defendant's statements without objection. In fact, defense counsel vigorously cross-examined Deputy Jaggers on his testimony regarding defendant's statements.

We hold the trial court did not abuse its discretion in summarily denying defendant's motion. Aside from the untimely nature of defendant's motion, we agree with the trial court that the State complied as best it could with defendant's request for disclosure, and that the State provided defendant with the substance of the statements it intended to use as soon as those statements became known to the State. Moreover, we discern no substantive legal basis upon which the trial court should have granted the motion. We disagree with defendant that the motion should have been granted on the basis that defendant's statements were made in violation of his *Miranda* rights. Specifically, defendant argues the statements were made after defendant was in custody and had requested an attorney, but before he had been informed of his *Miranda* rights.

" 'The *Miranda* warnings and waiver of counsel are required only when an individual is being subjected to custodial interrogation.

"Custodial interrogation" means questioning *initiated by law enforcement officers* after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " *State v. Kincaid*, 147 N.C. App. 94, 101, 555 S.E.2d 294, 300 (2001) (citations omitted) (emphasis added). " 'Neither *Miranda* warnings nor waiver of counsel is required when police activity is limited to general on-the-scene investigation.' " *Id.* (citation omitted).

In the present case, conceding defendant was "in custody," defendant's *Miranda* rights were not violated because his inculpatory statements were not made during a custodial interrogation as that term has been defined by our United States Supreme Court. *See Miranda v. Arizona*, 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706 (1966) (custodial interrogation requires questioning be initiated by law enforcement). Deputy Jagger's testimony clearly establishes that defendant initiated the conversation which led to his inculpatory statements. Defendant did not make the inculpatory statements in the context of a police-initiated interrogation, and thus was not required to have been informed of his *Miranda* rights. *See State v. Holcomb*, 295 N.C. 608, 611-12, 247 S.E.2d 888, 891 (1978) (although defendant was in custody, evidence did not result from "custodial interrogation" where police did not initiate questioning). Defendant has failed to show the trial court abused its discretion in summarily denying his motion to suppress. This argument is overruled.

[2] In his second argument, defendant contends he is entitled to a new trial because the trial court committed plain error in admitting testimony that defendant invoked his constitutional right to remain silent. Defendant failed to object to the introduction of the evidence when admitted, and we therefore may only review for plain error. Plain error is error " 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Parker*, 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999) (citation omitted), *cert. denied*, 528 U.S. 1084, 145 L. Ed. 2d 681 (2000).

The following colloquy took place between the prosecutor and Agent Tart on his direct examination:

Q. Okay. Did you at some point try to interview Mr. Parks after he was arrested?

A. Yes.

Q. And when was that?

A. That was on Thursday, July the 23rd at approximately 1:38 a.m. in the morning.

Q. Would this be after the delivery that occurred in Wake County?

A. Yes.

Q. And would this·be after the search warrant and the statements that Mr. Parks had earlier made to you?

A. Yes.

Q. Okay. And could you tell the jury, please, where it was that you tried to interview Mr. Parks and if·you did, in fact, interview him.

A. Yes. I attempted to interview Mr. Parks in an office in the Wake County Sheriff's Department Drug and Vice Unit.

. . .

Q. And did you read Mr. Parks his rights?

A. Yes.

Q. And did he execute a waiver of those rights?

A. He refused to waive his rights and refused to be interviewed.

Q. And did the interview cease at that time?

A. Yes.

We agree with defendant that the trial court's admission of this testimony regarding defendant's invocation of his right to remain silent was error. The State argues that our courts have recognized that such evidence is admissible when there is no specific incriminating accusation being leveled at the defendant because then there can be no inference of guilt by silence. However, an identical argument was recently rejected by this Court in *State v. Jones*, 146 N.C. App. 394, 553 S.E.2d 79 (2001).

In *Jones*, an officer testified that the defendant, who had been arrested and was in police custody, understood his rights and stated that he wanted an attorney before saying anything to the officers. *Id.* at 397, 553 S.E.2d at 81. The officer testified that defendant asserted his right to have counsel prior to speaking, but continued to state that he wanted to tell the officers what had happened. *Id.* at 397-98, 553

S.E.2d at 81-82. This Court observed that "[o]ur Supreme Court has held that the State may not introduce at trial evidence that a defendant exercised his constitutional rights." *Id.* at 398, 553 S.E.2d at 82.

We specifically rejected the State's argument, based on *State v. Williams*, 305 N.C. 656, 292 S.E.2d 243 (1982), upon which the State relies here, that the admission of such testimony was not error because it was not used to infer guilt. *Jones*, 146 N.C. App. at 398-99, 553 S.E.2d at 82. We noted that *Williams* preceded *State v. Ladd*, 308 N.C. 272, 302 S.E.2d 164 (1983), in which our Supreme Court held that the admission of a defendant's statement in which he invoked his right to counsel was error. *Jones*, 146 N.C. App. at 399, 553 S.E.2d at 82. We held that "to the extent that *Williams* holds that a defendant's statement in which he invokes his right to counsel [or to remain silent] may be admissible, we find that it has been superseded by the holding in *Ladd.*" *Id.* Nevertheless, we concluded the defendant was unable to show that the error in admitting the testimony amounted to plain error in light of the compelling evidence of the defendant's guilt presented at trial. *Id.* at 399, 553 S.E.2d at 82-83.

As in *Jones*, we hold in this case that while the trial court should not have admitted evidence that defendant refused to waive his constitutional rights and refused to be interviewed, defendant has failed to carry his burden of proving that the admission resulted in a miscarriage of justice and the denial of a fair trial, or that a different result would have occurred absent the error. The evidence against defendant in this case, as in *Jones*, was compelling. In addition to the testimony of officers who observed defendant throughout the "buy/bust," Ronald Jones identified defendant as the person from whom he had obtained the cocaine for Officer Anthony on several occasions, including during the "buy/bust" on 22 July 1998. Defendant made various voluntary inculpatory statements to Deputy Jaggers, including that he wanted to help himself out of trouble, that he could show Deputy Jaggers where he had gone in the woods and where he had put the jar, and that he had thrown the money given to him by Jones out of his car window when he realized he was being followed by law enforcement officers. Defendant did, in fact, retrieve the jar, which appeared to contain cocaine residue.

Moreover, defendant invoked his right to remain silent *after* he voluntarily made these various inculpatory statements. In *State v. Wilson*, 354 N.C. 493, 518-19, 556 S.E.2d 272, 289 (2001), the Supreme Court recently noted that even if admission of the defendant's invo-

R.J. REYNOLDS TOBACCO CO. v. N.C. DEP'T OF ENV'T & NATURAL RES.

[148 N.C. App. 610 (2002)]

cation of his right to remain silent was error, it was harmless in light of the fact that at the time the defendant invoked his right, he had already inculpated himself through prior statements to the officers, and the prosecutor never implied that the statement was an admission of guilt. *Id.* Likewise, the prosecutor in this case did not imply that defendant's invocation of his right to remain silent was an admission of guilt.

Even in *Ladd,* our Supreme Court held that although admission of the defendant's request to have counsel was error, in light of the overwhelming evidence of the defendant's guilt, any such error was harmless beyond a reasonable doubt. *Ladd,* 308 N.C. at 284, 302 S.E.2d at 172. In light of the compelling evidence of defendant's guilt presented in this case, we cannot hold that admission of Agent Tart's testimony that defendant would not be interviewed did not constitute error " 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *See Parker,* 350 N.C. at 427, 516 S.E.2d at 118 (citation omitted).

No error.

Judges GREENE and TYSON concur.