STATE OF NORTH CAROLINA v. CARLOS MAURICE FRINK

No. COA02-570

(Filed 1 July 2003)

## 1. Evidence— plea agreement of codefendant—no expression of opinion by trial court

The trial court did not commit structural or plain error in an attempted first-degree murder, first-degree murder, first-degree kidnapping, and conspiracy case by admitting evidence that the trial court had consolidated charges against a codefendant for sentencing on the condition that she give truthful testimony in proceedings related to the victim, because: (1) considering the totality of circumstances, there is no indication that the judge's sentencing of the codefendant prior to trial expressed an opinion to the jury; and (2) there is no evidence to support the proposition that the judge was impartial merely because he presided over both the codefendant's open plea and defendant's trial.

---

**2. Criminal Law— sentencing condition—enforceability—not presentation of false evidence**

The trial court did not commit structural or plain error in an attempted first-degree murder, first-degree murder, first-degree kidnapping, and conspiracy case by allegedly presenting false evidence based on defendant's contention that a codefendant's sentencing condition was unenforceable under N.C.G.S. § 15A-1021 which governs plea bargains, because: (1) the codefendant's guilty plea was an open plea of guilty and not a plea agreement with the State, and the trial court consolidated the codefendant's sentences to a single life sentence on the condition that she testify truthfully if called upon by the State; (2) there is no evidence that the enforceability of the condition was discussed at trial at all nor before the jury; and (3) even assuming the condition was unenforceable, it cannot be said that either the State or the trial court knew it was not and purposefully implied to the jury that it was.

**3. Evidence— codefendant's credibility—sentencing condition**

Although defendant contends the trial court committed plain error in an attempted first-degree murder, first-degree murder, first-degree kidnapping, and conspiracy case by instructing the jury to carefully consider a codefendant's credibility in light of her agreement with the trial court, defendant's assertion relied upon a finding that the trial court improperly admitted evidence of her sentencing condition which the Court of Appeals concluded was not error.

**4. Criminal Law— prosecutor's argument—asking defendant rhetorical questions**

The trial court did not err in an attempted first-degree murder, first-degree murder, first-degree kidnapping, and conspiracy case by failing to intervene ex mero motu when the State asked defendant rhetorical questions during closing arguments, because the questions did not stray far enough from the parameters of propriety that the trial court abused its discretion by not intervening on its own accord.

**5. Criminal Law— prosecutor's argument—suffering and mental torture of victims**

The trial court did not err in an attempted first-degree murder, first-degree murder, first-degree kidnapping, and conspiracy case by failing to intervene ex mero motu when the State

asked the jurors during closing argument to think about what happened to the three victims as they were in their car trunk not knowing what was going to happen to them, because the argument focused on the suffering and mental torture of the victims.

**6. Criminal Law— prosecutor's argument—implication defendant not raised by his mother**

The trial court did not abuse its discretion in an attempted first-degree murder, first-degree murder, first-degree kidnapping, and conspiracy case by allowing the prosecutor during closing argument to read album titles seized from the stolen vehicles to implicate that defendant was not raised by his mother, because: (1) the implication that defendant was raised by someone other than his mother is irrelevant and is not inherently degrading and disrespectful; and (2) considering the plethora of evidence against defendant, it cannot be concluded that the comment was prejudicial.

**7. Criminal Law— prosecutor's argument—disparaging comments about defense counsel**

Although defendant contends the trial court abused its discretion in an attempted first-degree murder, first-degree murder, first-degree kidnapping, and conspiracy case by allowing the prosecutor during closing argument to make comments allegedly disparaging defense counsel, there is no reasonable possibility that without these comments another result would have been reached.

**8. Criminal Law— prosecutor's argument—comparison of Crips gang's writings to Nazi writings**

Although the trial court abused its discretion in an attempted first-degree murder, first-degree murder, first-degree kidnapping, and conspiracy case by allowing the prosecutor during closing argument to compare the Crips gang's writings demonstrating their intent to the Nazi writings since they needlessly reference infamous acts that may improperly affect the jury, the requisite prejudice was not demonstrated to show that a reasonable possibility exists that a different result would have occurred.

Appeal by defendant from judgments entered 7 March 2001 by Judge William C. Gore, Jr., in Cumberland County Superior Court. Heard in the Court of Appeals 14 April 2003.

*Attorney General Roy Cooper, by Special Deputy Attorney General A. Danielle Marquis, for the State.*

*Margaret Creasy Ciardella, for defendant-appellant.*

CALABRIA, Judge.

Carlos Maurice Frink ("defendant") appeals judgments entered 7 March 2001 by Judge William C. Gore, Jr. ("Judge Gore") in Cumberland County Superior Court. Defendant asserts Judge Gore improperly admitted evidence of a codefendant's sentencing condition, and erred in permitting certain remarks by the prosecutor in closing argument. We find no prejudicial error.

The State's evidence tended to show the following facts. Defendant was a member of a gang known as the Crips. Tameika Douglas ("Douglas"), another gang member, testified for the State. On 17 August 1998, the gang decided to steal a car. Three newer members of the gang were sent out with instructions to return with a car and the owner in the trunk. They accosted Debra Alice Cheeseborough ("Cheeseborough"), took her money and jewelry, put her in the trunk of the car and returned to meet the remaining gang members. Defendant searched through belongings in Cheeseborough's car. Defendant and other older members of the gang met and decided to kill Cheeseborough. Defendant, Douglas, and other members of the gang drove, with Cheeseborough in the trunk, to a secluded area. The gang formed a semicircle around Cheeseborough and let her out of the trunk. Defendant instructed another member to shoot Cheeseborough in the head. The other member repeatedly shot Cheeseborough, and the gang left.

The gang met and agreed to steal another car. Douglas and other members got into Cheeseborough's car and drove around searching for the car. After following a number of cars, they finally followed and blocked a car occupied by Susan Raye Horne Moore ("Moore") and Tracy Rose Lambert ("Lambert"). They forced Moore and Lambert out of the car and into the trunk. Douglas took their money and jewelry. The group returned to the trailer, where defendant and other leaders were waiting. Defendant took the purses into the trailer and removed the money. The gang then drove in Moore's and Cheeseborough's cars into the country. They again circled the trunk of the car containing the victims. One member assisted Lambert out, and shut Moore in the trunk. Lambert was then taken by the arm, walked into the field, forced to her knees and shot in the head. A

different member then took the gun, and helped Moore out of the car. Moore began screaming when she saw Lambert dead. This member then walked Moore in a different direction, forced her to her knees and attempted to shoot her. After the gun jammed, he took out a knife to kill her. Moore plead "Please don't cut me. If you are going to kill me, then shoot me because I don't want to suffer." The man then repeatedly attempted to fire the gun, which continued to jam; on the fourth time, the gun fired and shot Moore in the head. The gang returned to the trailer and dispersed.

The next day, upon learning that Cheeseborough was alive, defendant, Douglas and other members of the gang took Cheeseborough's car and drove to Myrtle Beach. The police subsequently apprehended the group at a motel in Myrtle Beach.

Defendant was arrested, charged and convicted of numerous crimes including, *inter alia*, attempted first-degree murder, first-degree murder, first-degree kidnapping and conspiracy charges. Defendant was sentenced to a total of 1,570 months to 1,997 months and two terms of life imprisonment without parole. His sentences were imposed consecutively.

Defendant appeals asserting the trial court erred by: (I) admitting "evidence regarding the plea agreement codefendant Douglas had with the trial court[;]" and (II) permitting certain comments in the State's closing argument.

I. Douglas' Sentencing Condition

[1] State's Exhibit 171 is a transcript of Douglas' open plea with the court, wherein after Douglas pled guilty to all the charges, the court consolidated them "on condition that the defendant give truthful testimony in any proceedings if called upon to do so by the State of North Carolina." The court then sentenced Douglas to concurrent sentences for her crimes, including two terms of life imprisonment without parole. Regarding the condition, Douglas testified at defendant's trial:

STATE: All right. Then over on the back, on the top of the back side of that page, would you tell us, please, ma'am, what question 14 reads?

DOUGLAS: 'The prosecutor and your lawyer have informed the Court that these are all the terms and conditions of your plea.' Do you want me to read the answer?

**STATE v. FRINK**

[158 N.C. App. 581 (2003)]

STATE: Yes, ma'am.

DOUGLAS: The defendant agrees to plead guilty as charged to all counts in 99 CRS 1543 plus 99 CRS 2708 and has' now plea agreed—

STATE: And has what?

DOUGLAS: 'No plea agreement with the State of North Carolina.'

STATE: Okay. Go ahead.

DOUGLAS: 'The Court will consolidate all counts in 99 CRS 1543 plus 99 CRS 2708 plus sentencing on condition that the defendant give truthful testimony in any proceedings if called upon to do so by the State of North Carolina.'

. . .

STATE: Okay. And did you have a plea agreement with the state at all?

DOUGLAS: No, ma'am.

. . .

STATE: Okay. Now, Ms. Douglas, as you sit before this jury right now, do you now have or have you ever had any sort of plea agreement with Mr. Grannis, with Mr. Scott, with me, with anyone from the district attorney's office?

DOUGLAS: No, ma'am.

STATE: And so you're testifying why?

DOUGLAS: Testifying for the part of this transcript that the judge has signed that I testify truthfully if called upon by the state.

Defendant asserts the admission of the Exhibit 171 and Douglas' testimony that she was present pursuant to an agreement with the trial court, and not with the State, constitutes structural and plain error. Defendant further asserts the trial court committed plain error in its instruction to the jury regarding Douglas' sentencing condition.

" '[S]tructural error' is a 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *State v. Anderson*, 355 N.C. 136, 142, 558 S.E.2d 87, 92 (2002) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 113 L. Ed. 2d 302, 331 (1991)). However, our Supreme Court has recog-

nized the rarity of structural error, and noted the United States Supreme Court has found it in only a limited number of cases wherein the essential structure of our justice system was implicated. *Id.* Structural error may arise by the absence of an impartial judge. *Id.,* (citing *Tumey v. Ohio,* 273 U.S. 510, 71 L. Ed. 749 (1927)).

Alternatively, defendant asserts the trial court's admission of the exhibit and testimony constituted plain error. Since defendant failed to object to the admission of this evidence at trial, defendant correctly asserts appellate review is limited to plain error. N.C. R. App. 10(c)(4) (2003). "Plain error is error ' "so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached." ' " *State v. Parks,* 148 N.C. App. 600, 607, 560 S.E.2d 179, 184 (2002) (quoting *State v. Parker,* 350 N.C. 411, 427, 516 S.E.2d 106, 118 (1999) (quoting *State v. Bagley,* 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987))).

A. Impartial Tribunal

Defendant asserts his right to be tried by an impartial tribunal was violated because Judge Gore expressed his opinion of Douglas' testimony. Defendant argues the court expressed to the jury that it trusted Douglas to comply with the sentencing condition. Defendant explains that by sentencing Douglas before she complied with the condition, the court would have had no recourse had Douglas failed to testify. Therefore, defendant asserts, Judge Gore's trust of Douglas was apparent and improperly conveyed to the jury.

It is well established that "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2001). Our Court considers the totality of the circumstances to determine whether the judge has expressed an impermissible opinion. *State v. Wilkerson,* 148 N.C. App. 310, 317, 559 S.E.2d 5, 10, *rev'd on other grounds,* 356 N.C. 418, 571 S.E.2d 583 (2002).

Considering the totality of the circumstances, we find no indication that Judge Gore's sentencing of Douglas prior to trial expressed an opinion to the jury. Defendant's assertion that the jury could or would deduce an implied opinion is unconvincing. The enforceability of the condition was not discussed before the jury or raised before the trial court. Moreover, Judge Gore's only comment regarding Douglas' veracity was in the jury instruction. There, Judge Gore told

the jury to examine Douglas' testimony "with great care and caution in deciding whether or not to believe it" because she was testifying as a condition of her sentence. Accordingly, we find Judge Gore did not express an improper opinion and find neither structural nor plain error.

Defendant also asserts his right to be tried by an impartial tribunal was violated because "the trial court wanted the jury to validate his prior sentencing of Douglas." Defendant asserts the trial court's interest can be implied by the fact Judge Gore presided over both Douglas' open plea and defendant's trial. We find no support for this proposition, and accordingly hold there is no merit to defendant's argument that Judge Gore was not impartial, and overrule this assignment of error.

We note defendant correctly asserts that our system is structured such that the judge remains impartial. With regard to plea bargains, the judge's role is limited to acceptance or rejection of the bargain negotiated between defendant and the State. While our system permits the trial court judge to impose sentencing conditions, it does not permit this power to be utilized in substitution for the plea bargaining process. We expressly disapprove of such a practice. However, in the case at bar, we do not find the admission of evidence of Douglas' sentencing condition rises to the level of structural error.

B.  False Evidence

**[2]** Defendant asserts, alternatively, the court committed structural and plain error because the evidence constituted false evidence. Defendant explains the evidence was false since the sentencing condition was unenforcable under N.C. Gen. Stat. § 15A-1021, which governs plea bargains. Defendant asserts Judge Gore participated in misleading the jury by characterizing the sentencing condition as an agreement in his jury instruction. We disagree.

" '[I]t is established that a conviction obtained through use of false evidence, known to be such by representatives of the State, must fall under the Fourteenth Amendment.' " *State v. Williams*, 341 N.C. 1, 16, 459 S.E.2d 208, 217 (1995) (quoting *Napue v. Illinois*, 360 U.S. 264, 269, 3 L. Ed. 2d 1217, 1221 (1959)). The evidence presented was entirely true. Douglas' guilty plea was an open plea of guilty, and not a plea agreement with the State. Douglas never had a plea agreement with the State. The court, in its discretion, consolidated her sentences to a single life sentence on the condition that she testify truthfully if called upon by the State. Defendant's argument

regarding the knowing use of false evidence is based solely upon the assertion that the State and Judge Gore presented to the jury that the sentencing condition was enforceable, while defendant asserts it was not. However, there is no evidence that the enforceability of the condition was discussed at trial at all, nor, more importantly, before the jury. Accordingly, even assuming *arguendo* the condition is not enforceable, we cannot find either the State or Judge Gore knew it was not and purposefully implied to the jury it was. Therefore, defendant's assertion is without merit, and we cannot find the actions of the Judge and the State constituted presentation of known false evidence in violation of defendant's due process rights. Accordingly, we find neither structural nor plain error, and overrule this assignment of error.

C. Jury Instructions

[3] Defendant asserts the court committed plain error by instructing the jury to carefully consider Douglas' credibility in light of her agreement with the court. Defendant's assertion relied upon finding the court improperly admitted evidence of her sentencing condition, and in accordance with our decision, this assignment of error is overruled.

II. State's Closing Argument

Defendant asserts the trial court erred by permitting the State to make improper statements during closing argument during the guilt-innocence phase of the trial.

Our standard of review of the prosecutor's statements depends on whether defendant objected at trial. If defendant objected, "this Court must determine whether 'the trial court abused its discretion by failing to sustain the objection.' " *State v. Walters*, 357 N.C. 68, 101, —— S.E.2d ——, —— (2003) (quoting *State v. Jones*, 355 N.C. 117, 131, 558 S.E.2d 97, 106 (2002)). "When defendant fails to object to an argument, this Court must determine if the argument was 'so grossly improper that the trial court erred in failing to intervene ex mero motu.' " *Id.*, (quoting *State v. Barden*, 356 N.C. 316, 358, 572 S.E.2d 108, 135 (2002), *cert. denied*, —— U.S. ——, 155 L. Ed. 2d 1074 (2003)).

A. Failure to Intervene

[4] We first address those statements to which defendant did not object. Under these circumstances, " '[o]nly an extreme impropriety on the part of the prosecutor will compel this Court to hold that the

trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument that defense counsel apparently did not believe was prejudicial when originally spoken.' " *State v. Anthony*, 354 N.C. 372, 427, 555 S.E.2d 557, 592 (2001), *cert. denied*, 354 N.C. 575, 559 S.E.2d 184, *cert. denied*, 536 U.S. 930, 153 L. Ed. 2d 791 (2002) (quoting *State v. Richardson*, 342 N.C. 772, 786, 467 S.E.2d 685, 693 (1996)). The test for our Court is " 'whether the argument in question strayed far enough from the parameters of propriety that the trial court, in order to protect the rights of the parties and the sanctity of the proceedings, should have intervened on its own accord. . . .' " *Walters*, 357 N.C. at 102, —— S.E.2d at —— (quoting *Jones*, 355 N.C. at 133, 558 S.E.2d at 107). Defendant assigns error to the following argument:

> There are some things I don't think you and I can explain. Why in the world—(walked over in front of defense table)—Mr. Frink, would a civilized man do this to a fellow human being? What joy and fun do civilized men find in doing these things, Mr. Frink? Why wouldn't one of these civilized human beings, Mr. Frink, have tried to protect Debra Cheeseborough and saved her from this barbaric attack? Why wouldn't one of them have gone back and offered her aid and help, Mr. Frink? You were there. (Walked back to podium.)

Defendant argues these rhetorical questions were posed "for the purpose of irritating or provoking the defendant" and accordingly the trial court should have intervened. We disagree, and do not find these rhetorical questions asked of defendant "strayed far enough from the parameters of propriety" that the trial court abused its discretion by not intervening of its own accord. *State v. Hill*, 139 N.C. App. 471, 485, 534 S.E.2d 606, 615 (2000) (where the trial court intervened *ex mero motu* when the prosecutor during closing argument was agitated, approached the defense table and shouted rhetorical questions at defense counsel while brandishing the pistol introduced into evidence).

**[5]** Defendant also asserts it was error for the trial court not to intervene *ex mero motu* into the following argument:

> But you need to think about what happened to these three ladies as they're in the trunk of the car. You need to think about what they went through as they ride around in the trunk of the car. Not knowing what's going to happen to them. And then, of course, the ultimate bad happening to them. Think about

the suffering. Think about the torture. Think about the mental anguish. Think about it.

Generally, "[a]n argument 'asking the jurors to put themselves in place of the victims will not be condoned. . . .' " *State v. McCollum*, 334 N.C. 208, 224, 433 S.E.2d 144, 152 (1993) (quoting *United States v. Pichnarcik*, 427 F.2d 1290, 1292 (9th Cir. 1970)). However, " 'this Court has consistently allowed arguments where the prosecution has asked the jury to imagine the emotions and fear of a victim. . . .' " *Anthony*, 354 N.C. at 428, 555 S.E.2d at 592 (quoting *State v. Wallace*, 351 N.C. 481, 529, 528 S.E.2d 326, 356 (2000)). Since this argument focused on the suffering and mental torture of the victims, we hold the trial court did not err by failing to intervene *ex mero motu*.

B. Failure to Sustain the Objection

We next address those statements to which defendant objected at trial. Our standard of review is abuse of discretion. *Walters*, 357 N.C. at 102-03, —— S.E.2d at ——. "Application of the abuse of discretion standard to closing argument requires this Court to first determine if the remarks were improper." *Id.*, 357 N.C. 101, —— S.E.2d at ——. " '[I]mproper remarks include statements of personal opinion, personal conclusions, name-calling, and references to events and circumstances outside the evidence, such as the infamous acts of others.' " *Id.*, 357 N.C. 105, —— S.E.2d at —— (quoting *Jones*, 355 N.C. at 131, 558 S.E.2d at 106). Upon finding improper remarks were made, " 'we determine if the remarks were of such a magnitude that their inclusion prejudiced defendant, and thus should have been excluded by the trial court.' " *Id.*, 357 N.C. 101, —— S.E.2d at —— (quoting *Jones*, 355 N.C. at 131, 558 S.E.2d at 106). "In order to demonstrate prejudicial error, a defendant must show that there is a reasonable possibility a different result would have been reached had the error not occurred." *State v. Allen*, 353 N.C. 504, 509, 546 S.E.2d 372, 375 (2001) (holding prejudicial error because prosecutor's argument); *State v. Little*, 126 N.C. App. 262, 268, 484 S.E.2d 835, 839 (1997) (holding no prejudicial error despite prosecutor's argument).

[6] Defendant assigns error to the prosecutor's reading of album titles seized from the stolen vehicles, wherein the prosecutor said: " 'Mama Raised Me.' You heard a shred of evidence about any mama—anybody's mama raising 'em, amongst this group of people right here, including that defendant (indicating)?" Defendant objected at trial, and asserts on appeal that the prosecutor implied

that defendant was not raised by his mother, and "[t]his comment is analogous to the State calling a defendant a 'mean S.O.B.'" and is reversible error under *State v. Davis*, 45 N.C. App. 113, 114-15, 262 S.E.2d 329, 329-30 (1980). We find this remark was an improper remark. However, we do not find this remark was prejudicial error. The implication that defendant was raised by someone other than his mother is irrelevant, and is not inherently "degrading and disrespectful. . . ." *Davis*, 45 N.C. App. at 115, 262 S.E.2d at 330. Considering the plethora of evidence against defendant, we cannot conclude this comment was prejudicial.

**[7]** Defendant assigns error to the following closing arguments:

PROSECUTOR: Now, the state didn't just go out—walk out in the street—now, that's something defense counsel like to do. They like to come up and tell you all—

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

PROSECUTOR: —that the police botched it. Why don't we have the deaf guy? Where is Ione Black?

. . .

PROSECUTOR: I know this has been a long ordeal for y'all. And I don't want to just go on and on, (indicating) but when the defense counsel gets up here—

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

PROSECUTOR: —and tries to tell—put a spin on what you saw with your own eyes, I ask you the question that Groucho Marx asked one time, 'You going to believe me or your lying eyes?' You see? So you believe your own eyes, ladies and gentlemen of the jury.

Defendant asserts these remarks were improper, and made with the intent to disparage defense counsel. The State asserts this argument was proper and merely countered defendant's contention that the State failed to meet its burden of proof. We need not determine the impropriety of these arguments since we cannot find a reasonable possibility exists that without these comments another result would have been reached. Accordingly, we find no prejudicial error.

**STATE v. FRINK**

[158 N.C. App. 581 (2003)]

**[8]** Defendant assigns error to improper comments by the prosecutor during closing argument referencing Hitler and the Nazis. The prosecutor made the following arguments:

> PROSECUTOR: And he wants you to think that he's sitting over there fresh out of college with a tie on, a haircut, cleaned up. He would deceive you, ladies and gentlemen of the jury. Evil doesn't necessarily have a bad or dirty or whatever kind of face you want to put on it. Ordinary people could be evil. Did you know a man named Heinrich Himmler that was responsible for the slaughter of—

> DEFENSE COUNSEL: #1: Objection.

> DEFENSE COUNSEL: #2: Objection.

> PROSECUTOR: —the Jews?

> THE COURT: Overruled.

> PROSECUTOR: Did you know he was a chicken farmer? The man raised chickens, but he went to a meeting called the Wannsee Conference, and he sat down with a bunch of other people and planned to slaughter six million people or more. This defendant (walked over to defense table, indicating) was sitting right at 1386 Davis Street with his friends (walked over in front of easel), planning to slaughter somebody. Didn't know who. Didn't know it was going to be Debra Cheeseborough. Didn't know it was going to be Susan Moore. (Moved over in front of DA's table.) Didn't know it was going to be Tracy Lambert. But they knew they were gonna slaughter somebody. Isn't that wicked? Isn't that vile?

> . . .

> PROSECUTOR: Now, let me—let me jump back to Nazi Germany right quick.

> DEFENSE COUNSEL: Objection, your Honor.

> THE COURT: Overruled.

> PROSECUTOR: The reason Telford Taylor and those men that tried the Nuremberg criminals at the Nuremberg trials were able to find out so much is because the Germans put it in writing, the Nazis put it in writing, (held up exhibit) just like them (indicating defense table), put it in writing.

> . . .

PROSECUTOR: This was found in their gang headquarters. (Indicating easel.) End of the World War II, that's where those folks—that's where our soldiers got all that information from when they went in the bunker and went in Bertchesgaden, found all that stuff that belonged to Hitler and their gang. They put it in writing. Unbelievable, but they put it in writing. These people put their intent in writing. (Indicating, holding exhibit.)

We agree with defendant that these arguments were improper. Although our courts "do not completely restrict closing arguments to matters that are only within the province of the record, to the exclusion of *any* historical references. . . . [We] will not allow such arguments designed to inflame the jury, either directly or indirectly, by making inappropriate comparisons or analogies." *Walters*, 357 N.C. at 105, —— S.E.2d ——. Moreover, "using Hitler as the basis for the example has the inherent potential to inflame and to invoke passion in the jury, particularly when defendant is compared to Hitler in the context of being evil." *Walters*, 357 N.C. at 105, —— S.E.2d at ——. We find prosecutor's comments comparing defendant to Himmler also has the inherent potential to improperly impassion the jury and such statements are improper. We find prosecutor's comments comparing the Crips' writings demonstrating their intent to the Nazi writings are also improper as they needlessly reference infamous acts that may improperly affect the jury.

However, we find the requisite prejudice was not demonstrated. In the present case, we find no support for the assertion that without these comments by the prosecutor a reasonable possibility exists a different result would have occurred.

Defendant neither briefed nor argued his remaining assignments of error and accordingly they are deemed abandoned. N.C. R. App. 28(b)(6) (2003).

No error.

Chief Judge EAGLES and Judge HUNTER concur.