STATE OF NORTH CAROLINA v. WILLIAM ELMORE

No. 507A93

(Filed 6 October 1994)

**Evidence and Witnesses § 1250 (NCI4th)— invocation of rights to silence and counsel—F.B.I. agent's testimony—harmless error**

Assuming *arguendo* that the trial court in a first-degree murder prosecution erred by failing to sustain defendant's objection and grant his motion to strike testimony by an F.B.I. agent who arrested defendant for unlawful flight to avoid prosecution that he asked defendant "if he was willing to make a statement, at which time he said he wanted to consult with an attorney before talking about the arresting matter," this error was harmless beyond a reasonable doubt where (1) any violation of defendant's rights was *de minimis* because the testimony was not solicited by the prosecutor, was offered by the F.B.I. agent simply to explain why he discontinued questioning of the defendant, and was not further emphasized by additional questions or comments; (2) the State did not refer in closing arguments to defendant's exercise of his rights to remain silent and to request counsel during interrogation, defendant was not cross-examined on the matter, and no other witness made any reference to defendant's invocation of his rights; and (3) the evidence against defendant was overwhelming, and the record reveals that the sources of defendant's credibility problems were his flight from this state, his efforts to conceal his identity from police, and the fact that his testimony that he shot the victim in defense of himself and another person was contradicted by all other evidence in the case,

including testimony by the person in whose defense defendant testified that he acted.

**Am Jur 2d, Criminal Law §§ 788 et seq.; Evidence §§ 749 et seq.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Allen (J.B., Jr.), J., on 20 May 1993 in Superior Court, Wake County, upon a jury verdict finding the defendant guilty of murder in the first-degree. Heard in the Supreme Court on 13 September 1994.

*Michael F. Easley, Attorney General, by Mary D. Winstead, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Staples Hughes, Assistant Appellate Defender, for the defendant-appellant.*

MITCHELL, Justice

The defendant William Elmore was tried noncapitally at the 17 May 1993 Criminal Session of Superior Court, Wake County, for murder in the first degree and discharging a firearm into an occupied vehicle. The jury returned a verdict finding the defendant guilty of first-degree murder based on both the theory of premeditation and deliberation and the felony murder theory. The jury also found him guilty of discharging a firearm into an occupied vehicle. The trial court imposed a mandatory sentence of life imprisonment for the first-degree murder conviction and continued prayer for judgment on the discharging a firearm conviction. The defendant does not seek to appeal his conviction for discharging a firearm into an occupied vehicle.

The State's evidence tended to show the following:

During the afternoon of 30 March 1991, Bruce Thomas and the victim, William Green, drank gin and smoked cocaine. That evening Thomas drove both of them in the victim's van to East Street in Raleigh, where they intended to trade the victim's shotgun for more cocaine.

When Thomas stopped on East Street, the defendant and Travis Porter approached the van. The victim and Thomas told the defendant and Porter that they wanted cocaine. The defendant replied that he had cocaine and, after some discussion, he gave the two a sample

to smoke. The victim and Thomas asked whether the defendant had anything better and the defendant replied that he did. The victim showed the defendant the shotgun he wanted to trade for the cocaine. The defendant asked if they had any pistols and they responded that they did not. The defendant then left, presumably to get the other cocaine. Porter remained at the van during the ten minutes or so that the defendant was gone.

When the defendant reappeared across the street from the van, he was carrying a gun wrapped in a towel. He dropped the towel and shouted to the victim and Thomas to open the door and drop all their money and belongings out of the van. The defendant shot once or twice as he walked toward the van and then shot two or three times into the van once he reached it. The defendant and others at the scene fled. The victim Green died from a gunshot wound to the neck.

In the days following the shooting, the defendant learned that the victim had died and that the police were looking for him. He left North Carolina for Atlanta, Georgia, where his mother lived. He moved five or six times after arriving in Atlanta. He also obtained false identification and lived under the alias Robert Winslow because he knew the police were looking for him.

The F.B.I. became involved in the search for the defendant because a federal warrant for the defendant charging him with unlawful flight to avoid prosecution had been issued. On 12 May 1992, Agent Green of the F.B.I. arrested the defendant in Atlanta. Upon his arrest the defendant gave a false name but shortly afterwards confessed his true identity. Agent Green processed the defendant in Atlanta and subsequently had him transported back to Raleigh.

The defendant testified on his own behalf and stated that he fired the gun in defense of himself and Travis Porter. Much of his testimony coincided with the State's evidence except for his testimony regarding the events immediately surrounding the shooting. He testified that he left the area where the van was parked and got a gun after Porter got into an argument with the victim and Thomas. When he approached the van on his return, he saw the shotgun pointed first at Porter and then at him. In fear, he responded by shooting several times ·in the direction of the van. The other witnesses, including Porter, contradicted his account.

In his only assignment of error, the defendant contends that the trial court erred by failing to sustain his objection and grant his

motion to strike certain testimony by Agent Green. At trial, Agent Green testified regarding his apprehension and processing of the defendant in Atlanta on the unlawful flight charge. The following portion of his testimony is at issue:

PROSECUTOR: What happened—when did you next see the Defendant?

AGENT GREEN: The next morning we picked him up from the Douglas County Correctional Facility, at which time we took him to our office, processed him, which includes fingerprinting and photographing him.

On our transportation to the office, I again advised him of his Constitutional rights, *asked him if he was willing to make a statement, at which time he said he wanted to consult with an attorney before talking about the arresting matter.*

The defendant argues that the trial court's error allowed the jury to impermissibly consider as evidence against him the fact that he would not give his exculpatory version of events to police when he was first arrested. The defendant contends that the challenged testimony violated his Fifth Amendment rights to silence and to counsel. The State responds that there was no error because the defendant invoked his rights only as to the federal unlawful flight charge, which was not a charge for which he was on trial. Alternatively, the State argues that any error was harmless beyond a reasonable doubt.

The defendant correctly points out that a defendant's exercise of his constitutionally protected rights to remain silent and to request counsel during interrogation may not be used against him at trial. *See State v. Ladd*, 308 N.C. 272, 283-84, 302 S.E.2d 164, 171-72 (1983). However, such a constitutional error will not warrant a new trial where it was harmless beyond a reasonable doubt. N.C.G.S. § 15A-1443(b) (1993). Assuming *arguendo* that the trial court erred by failing to sustain the defendant's objection and strike the objected-to portion of Agent Green's testimony, we conclude that the error was harmless beyond a reasonable doubt.

First, any violation of the defendant's rights was *de minimis*. The challenged testimony came in response to a question that requested a chronology of the events surrounding the defendant's arrest and processing in Atlanta. The reference to the defendant invoking his rights went beyond the information sought by the prosecutor's innocuous question. The reference was not further emphasized by additional

**STATE v. ELMORE**

[337 N.C. 789 (1994)]

questions or comments during Green's testimony. The record indicates that the testimony at issue was not solicited by the prosecutor and the remark apparently was offered by Agent Green simply to explain why he discontinued his questioning of the defendant. In light of the context in which this arose and the single brief mention by one witness of this matter, this was a *de minimis* violation.

Second, the record does not show that in closing arguments the State referred to the defendant's exercise of his constitutional rights. Neither does the record show that the defendant was cross-examined on the matter or that any other witness made reference to the defendant invoking his rights. These facts distinguish this case from other cases where this Court has found error when the prosecutor directly commented on a defendant's failure to testify or when a defendant was cross-examined about his invocation of his rights. *See, e.g., State v. Reid,* 334 N.C. 551, 434 S.E.2d 193 (1993).

Finally, the evidence against the defendant was overwhelming. The defendant argues that his credibility was damaged by the revelation that he invoked his rights to silence and to counsel. However, the record reveals that the sources of the defendant's credibility problem were his flight from this state, his efforts to conceal his identity from police, and the fact that the critical part of his testimony was contradicted by all other evidence in the case. The defendant fled the jurisdiction following the shooting. He hid in Atlanta for over a year, where he lived under an alias using false identification. His testimony was the only evidence that, if believed, would have made his story that he was engaged in self-defense and defense of Porter plausible. Five other eyewitnesses contradicted his testimony, including Porter in whose defense the defendant testified that he had acted.

For the foregoing reasons, we conclude that the trial court's error, if any, was harmless beyond a reasonable doubt.

No error.