STATE OF NORTH CAROLINA v. KENNETH EDWARD JORDAN

No. COA01-545

(Filed 16 April 2002)

**Criminal Law— prosecutor's argument outside record—failure to grant mistrial—lack of intervention following objections**

The trial court abused its discretion in an action where defendant was found guilty of voluntary manslaughter by failing to grant defendant's motion for a mistrial under N.C.G.S. § 15A-1061 based on the prosecutor's improper and inflammatory jury argument concerning a witness's pretrial statements that were never admitted into evidence and the prosecutor's comparison of defense counsel to Joseph McCarthy, because: (1) an attorney may not make arguments on the basis of matters outside the record, N.C.G.S. § 15A-1230(a), and the prosecutor in this case traveled outside the record in asking the jury to consider the excluded transcripts containing the witness's pretrial statements; (2) the prosecutor belabored his prejudicial comments for several paragraphs of his closing argument, and the prosecutor's voluminous comments appear to have been impermissibly calculated to mislead or prejudice the jury given the lack of evidence on record to support the McCarthy analogy; and (3) although defendant

twice objected and the trial court twice instructed the prosecutor to move on, the trial court failed to instruct the jury to disregard the prosecutor's comments.

Appeal by defendant from judgment entered 22 May 2000 by Judge Loto G. Caviness in Watauga County Superior Court. Heard in the Court of Appeals 14 March 2002.

*Attorney General Roy Cooper, by Assistant Attorney General Philip A. Lehman, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Beth S. Posner, and Assistant Appellate Defender Daniel R. Pollitt, for defendant-appellant.*

MARTIN, Judge.

Defendant, Kenneth Edward Jordan, was indicted for first degree murder. He entered a plea of not guilty. A jury returned a verdict finding him guilty of voluntary manslaughter. Defendant appeals from the judgment entered on the verdict.

The evidence at trial tended to show that the victim, Christopher Scott Pendley, died from a shotgun wound to the neck in the early morning hours of 14 January 1999. The shooting took place in the home of defendant following an argument between defendant and Pendley, who had been friends since the eighth grade. At the time of the shooting, Pendley was temporarily residing with defendant and defendant's wife.

The State's evidence tended to show that on the night of 13 January 1999, defendant, his wife, Pendley, and their mutual friend, Monique Harman, were socializing at defendant's mobile home. Defendant and Pendley had been drinking beer and consuming prescription Xanax since early in the afternoon. The four shared two marijuana cigarettes and ingested more Xanax, and defendant and Pendley also continued to drink beer. Sometime after 11 p.m., defendant, his wife, and Harman retired to the back bedroom of the mobile home where they engaged in a three person sexual encounter. Pendley did not participate. Following the sexual activity, defendant's wife left the bedroom. Harman testified that soon after, defendant returned to the living room and that she followed several seconds behind him. Harman testified that defendant's wife and Pendley were lying on the living room floor under a blanket. Defendant accused Pendley of "sleeping with" defendant's wife,

which Pendley denied, and an argument broke out between the two men. Defendant and his wife left the living room and defendant's wife pushed him against the wall. They returned to the living room and defendant then went into another bedroom, and Pendley followed him into the hall. Harman testified that she saw defendant come out of the bedroom and turn away to talk to defendant's wife. She then heard a gunshot and when she turned to look, Pendley was lying on the floor. Defendant said that Pendley "would not be talking s—t to him anymore" and told Harman to go home and not to tell anyone what had happened.

Defendant testified that after his wife left the bedroom he fell asleep. He woke up alone, and returned to the living room where he found Harman sitting on the couch, and Pendley and defendant's wife on the floor under a blanket. When defendant spoke, his wife and Pendley jumped up; his wife had no clothing on and Pendley was pulling on his sweat shorts. Pendley immediately denied engaging in any sexual activity with defendant's wife. Defendant and his wife argued and defendant ordered Pendley to leave. Pendley refused; the two men exchanged angry words and defendant testified that Pendley threatened him. Defendant testified that he then retreated to the back bedroom to gather his clothes and, as he was returning to the living room, Pendley stepped out of a side bedroom with a shotgun in his hand. When defendant attempted to maneuver past him, Pendley struck defendant on the side of the head. The two men began to wrestle and defendant testified that as he was trying to pry the gun away from Pendley, the gun went off, fatally wounding Pendley. Defendant claimed self-defense and accident.

Defendant assigns error to the trial court's failure to grant his motion for a mistrial, made after an allegedly improper and inflammatory jury argument by the prosecutor. The assignment of error arises upon the following occurrences during trial. During her cross-examination, Harman testified that she gave as many as ten statements to investigating officers during their investigation of Pendley's death. Defendant's counsel sought to impeach her direct testimony by examining her using excerpts from some of her pre-trial statements. The State did not attempt, on re-direct, to rehabilitate her testimony by examining her about prior consistent statements, but sought to introduce Harman's prior statements to the investigating detective during the officer's testimony. Upon defendant's objections, and after a voir dire, the trial court ruled that the statements were admissible to the extent they corroborated Harman's testimony, but

**STATE v. JORDAN**

[149 N.C. App. 838 (2002)]

that the statements could not be published to the jury. Subsequent to the court's ruling, the prosecutor either referenced the transcripts in their entirety or attempted to enter them into evidence on approximately nine occasions during the State's case and four occasions during defendant's case. On each occasion, defendant's objection was sustained.

During his jury argument, the prosecutor made the following argument:

> What Senator Joe then started doing was taking a brief case into the Senate hearing room and he would lay that briefcase up on the table and he would say, "Now, folks here in the Senate Chamber, I have proof positive here in this brief case that such and such a person is a communist and a member of the American Communist Party." He would say, "Now, these papers that I have in here, I can't let you look at them, they're secret, but I will tell you that they say this and they say this and they say that." The press would say, "Senator Joe, let us see the papers." "No, no, I can't let you look at them but this is what they say."

> It was determined after the fall and disgrace of Senator Joe McCarthy that normally all he had in that brief case was a salami sandwich that his wife made him for his lunch. But through Senator Joe's statements for a good while the communist scare of the 50's came about and hundreds and thousands of innocent lives and reputations were ruined. [Defense Counsel] have presented their case. As [they] argued to you, I couldn't help but think of Senator Joe. They tell you that within these statements that Monique Harman made is proof positive that she's lying. Within these statements they say are statements that show they cannot be true. Within these statements they say are things that actually corroborate what their client says. Within these statements they say is proof positive that our client is not guilty. They stand here before you and say now in these statements it says this, and in these statements it says this, and in these statements it says this and this. Like Senator Joe did they ever give you a copy of them?

> Mr. Speed: Objection.

> Mr. Wilson: If it says—

> The Court: Move on.

**STATE v. JORDAN**

[149 N.C. App. 838 (2002)]

Mr. Wilson: If it says what they say it says, wouldn't they stand up here handing each and every one of you a copy saying here, read this, read this, read this—

Mr. Speed: Objection.

The Court: Move on.

Defendant's motion for a mistrial based on the argument was denied. Defendant contends the prosecutor's arguing outside the record in this manner created "substantial and irreparable prejudice." The argument has merit.

"Prosecutors are granted wide latitude in the scope of their argument." *State v. Zuniga*, 320 N.C. 233, 253, 357 S.E.2d 898, 911, *cert. denied*, 484 U.S. 959, 98 L. Ed. 2d 384 (1987). They are allowed to argue the law and the facts *in evidence* and present all reasonable inferences to be drawn from them. *State v. Craig*, 308 N.C. 446, 454, 302 S.E.2d 740, 745, *cert. denied*, 464 U.S. 908, 78 L. Ed. 2d 247 (1983) (emphasis added) (citations omitted). But the law is clear that during a closing argument to the jury an "attorney may not . . . make arguments on the basis of matters outside the record . . . ." N.C. Gen. Stat. § 15A-1230(a) (1999). Likewise, our courts have consistently refused to tolerate "remarks not warranted by either the evidence or the law, or remarks calculated to mislead or prejudice the jury." *State v. Smith*, 352 N.C. 531, 560, 532 S.E.2d 773, 791-92 (2000), *cert. denied*, 532 U.S. 949, 149 L. Ed. 2d 360 (2001); *State v. Sanderson*, 336 N.C. 1, 15-16, 442 S.E.2d 33, 42 (1994); *State v. Wilson*, 335 N.C. 220, 224-25, 436 S.E.2d 831, 834 (1993); *State v. Anderson*, 322 N.C. 22, 37, 366 S.E.2d 459, 468 (1988).

G.S. § 15A-1061 provides that "the judge must declare a mistrial upon the defendant's motion if there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, resulting in substantial and irreparable prejudice to the defendant's case." The decision whether to grant a motion for mistrial falls within the discretion of the trial judge. *State v. Boyd*, 321 N.C. 574, 579, 364 S.E.2d 118, 120 (1988). For the decision to be reversed on appeal, the reviewing court must find that the trial court abused its discretion. *Id.* Abuse of discretion occurs when a trial court's ruling was manifestly unsupported by reason and thus could not have been the result of a reasoned decision. *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986).

In this case, the transcripts of Harman's pre-trial statements were never admitted into evidence and thus never became part of the record. The prosecutor therefore clearly traveled "outside the record" in asking the jury to consider the excluded transcripts when reaching its verdict. In so doing, he violated G.S. § 15A-1230(a). We analyze the prejudicial nature of this misconduct to assess whether the trial court abused its discretion in failing to declare a mistrial.

In *State v. Allen*, 353 N.C. 504, 508, 546 S.E.2d 372, 374 (2001), our Supreme Court granted a new trial when during closing argument, the prosecutor told the jury they had been allowed to hear a certain piece of the State's evidence "because the Court found [the evidence was] trustworthy and reliable . . . . If there had been anything wrong with that evidence, you would not have heard that." On appeal, the Supreme Court found that the prosecutor's statement "travel[ed] outside the record" by alluding to the trial judge's findings and opinions made during a hearing held outside the jury's presence. The Court held that the jurors' knowledge of the judge's opinion unduly biased them against the defendant, entitling him to a new trial. *Id.* at 508-09, 546 S.E.2d at 374-75.

Similarly, in *State v. Roach*, 248 N.C. 63, 65-66, 102 S.E.2d 413, 414 (1958), our Supreme Court granted a new trial when, during closing argument, the prosecutor told the jury, "I tell you I could get a number of people, at least one hundred, to come in here and testify to [the defendant's] bad character." The Court held that the "one hundred" witnesses were clearly outside the record and that the prejudice created was not cured by the trial court's instruction to the jury to disregard the prosecutor's statement. *Id.*

In this case, the prosecutor used evidence outside the record to make a statement equally, if not more grossly, prejudicial to defendant than those made in *Allen* and *Roach*. Comparing defendant's counsel to Joseph McCarthy thoroughly undermined his defense by casting unsupported doubt on counsel's credibility and erroneously painting defendant's defense as purely obstructionist. Further, unlike *Allen* and *Roach* where the prejudicial comment comprised one or two sentences, the prosecutor in this case belabored his prejudicial comments for several paragraphs of his closing argument. Given the lack of evidence on record to support the McCarthy analogy, the prosecutor's voluminous comments appear to have been impermissibly "calculated to mislead or prejudice the jury." *Smith*, 352 N.C. at 560, 532 S.E.2d at 791-92; *Sanderson*, 336 N.C. at 15-16, 442 S.E.2d at 42

(1994); *Wilson*, 335 N.C. at 224-25, 436 S.E.2d at 834; *Anderson*, 322 N.C. at 37, 366 S.E.2d at 468.

Finally, where a defendant objects to an improper remark made by the prosecutor during closing argument, the trial court may cure the impropriety by immediately instructing the jury to disregard the offensive statement. *State v. Woods*, 307 N.C. 213, 222, 297 S.E.2d 574, 579 (1982). In this case, defendant twice objected and the trial court twice instructed the prosecutor to "move on." At no time, however, did the trial court instruct the jury to disregard the prosecutor's comments.

Reversal of a denial of a motion for mistrial requires a showing that the trial court abused its discretion in failing to recognize the "substantial and irreparable prejudice" resulting from some occurrence during trial. Given the egregious nature of the beyond-the-record argument and the trial court's lack of intervention following defendant's appropriate objections, we hold that the prosecutor's misconduct "resulted in substantial and irreparable prejudice" to defendant's case. Therefore, we must hold that the trial court's failure to grant the motion for mistrial was an abuse of discretion, and that defendant is entitled to a new trial. We find it unnecessary to reach defendant's remaining allegations of error as they may not recur at defendant's new trial.

New Trial.

Judges HUDSON and THOMAS concur.