STATE OF NORTH CAROLINA v. MASOUD RASHIDI

No. COA04-311

(Filed 16 August 2005)

**1. Search and Seizure— anticipatory search warrant—probable cause—failure to demonstrate false statements**

Although defendant contends the trial court erred in a trafficking in opium by possessing twenty-eight grams or more and possessing drug paraphernalia case by denying defendant's

motion to suppress evidence based on alleged false statements contained in an affidavit supporting an application for a search warrant, the Court of Appeals does not need to decide whether defendant sufficiently established knowing or reckless false-hoods because: (1) defendant failed to demonstrate that any false statements were material; and (2) the other statements in the affidavit were sufficient to support the issuance of an anticipatory search warrant.

## 2. Drugs— trafficking in opium by possession—motion to dismiss—sufficiency of evidence—constructive possession

The trial court did not err by denying defendant's motion to dismiss the charge of trafficking in opium by possession, because: (1) the State was not required to show who placed the opium in the pertinent parcel, but instead was required to show defendant knew or expected that the package contained opium and intended to control its disposition or use; (2) defendant received the package addressed to him at his residence, and before or shortly after the officers announced their presence, hid the opium contained in a United States Customs bag in a trash bag of clothes in a bedroom; (3) officers found multiple similarly addressed packages in defendant's carport and defendant admitted that he had expected to receive a package from his brother-in-law containing a picture; (4) defendant admitted he had used opium and officers found a film cannister containing traces of opium in his front pocket; and (5) during a search of defendant's car, officers found in its console hand-held scales of a type frequently used to weigh drugs, a safety pin or "wire stem" coated in opium, and $1,160 in cash, and prior precedents have determined that such evidence is sufficient to allow a jury to find constructive possession.

## 3. Constitutional Law— referencing defendant's invocation of right to counsel—harmless error

Assuming arguendo that the trial court erred in a trafficking in opium by possessing twenty-eight grams or more and possessing drug paraphernalia case by allowing an officer to testify regarding defendant's request for an attorney, the error was harmless beyond a reasonable doubt because: (1) there was overwhelming evidence of defendant's guilt of drug trafficking and the State's evidence left no reasonable doubt that defendant knowingly possessed thirteen times the statutory amount; (2) the State made no reference to defendant's invocation of his right to coun-

STATE v. RASHIDI

[172 N.C. App. 628 (2005)]

sel in closing arguments which makes this case distinguishable from others where a new trial was required; (3) no other witnesses were questioned about defendant's invocation and defendant was not cross-examined about invoking his constitutional rights; and (4) the fact that the State asked the witness directly whether defendant invoked his right to counsel is not sufficient, standing alone, to overcome the overwhelming evidence of defendant's guilt.

**4. Criminal Law— prosecutor's argument—flight—written display—motion for mistrial—request for curative instruction**

The trial court did not abuse its discretion in a trafficking in opium by possessing twenty-eight grams or more and possessing drug paraphernalia case by denying defendant's motion for a mistrial or, in the alternative, his request for a curative instruction when the State displayed to the jury, on two 8½ by 11 inch paper panels, information outside the record during closing arguments regarding defendant's alleged flight to Canada, because: (1) assuming arguendo that the displays constituted a spoken argument or remark, the disputed displays were apparently visible to the jury for just about thirty seconds, the prosecutor never commented on them to the jury, and the State removed them immediately after defendant objected to their content; and (2) no evidence shows these displays were persistently confronting the jury when they were two of sixteen 8½ by 11 paper panels visible for less than a minute, and thus, the displays were not more prejudicial than a fleeting remark once voiced but not repeated.

Judge GEER concurring in part and dissenting in part.

Appeal by defendant from judgments entered 15 August 2003 by Judge Yvonne Mims Evans in Mecklenburg County Superior Court. Heard in the Court of Appeals 16 February 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Alexandra M. Hightower, for the State.*

*Appellate Defender Staples Hughes, by Assistant Appellate Defender Barbara S. Blackman, for defendant-appellant.*

TYSON, Judge.

Masoud Rashidi ("defendant") appeals from judgments entered after a jury found him guilty of trafficking in opium and possessing drug paraphernalia. We find no prejudicial error.

## I. Background

The State's evidence tended to show that on 8 November 1999, United States Customs Special Agent Patrick McDavid ("Agent McDavid") was working in the Charlotte office. He was contacted by customs agents working in New York's JFK International Airport, who stated they had intercepted a package sent from Iran addressed to "M. Rashidi" at 2408 Margaret Wallace Road, Matthews, North Carolina. The New York customs agents had determined that the package contained two pictures or plaques with unusually thick frames. A probe inserted into one of the frames revealed that the frames contained opium estimated to weigh approximately 412 grams.

The New York customs agents sent the package to Agent McDavid in Charlotte for a controlled delivery. After receiving the package, Agent McDavid confirmed through Division of Motor Vehicles' records that defendant lived at the address indicated on the package. Agent McDavid drafted an affidavit in support of an application for an anticipatory search warrant for defendant's address. The United States District Court for the Western District of North Carolina issued the search warrant.

On 17 November 1999, United States customs agents and Charlotte police officers attempted to deliver the package by a postal inspector posing as a postal carrier. When the inspector first attempted to deliver the package at 11:21 a.m., no one was home to receive it. The officers set up a surveillance of the house. At approximately 2:30 p.m., a red Mustang vehicle pulled up to the residence. The driver got out of the car and went inside. The postal inspector delivered the package to a male located inside the residence. After delivery, the inspector radioed the surveillance team and stated the man who received the package matched defendant's drivers' license photo.

The officers waited a few minutes to allow defendant an opportunity to open the package. At that point, Agent McDavid knocked on the door and yelled loudly, "Police with a search warrant." Thirty to forty-five seconds later after having received no response, the officers forced the door open and found defendant talking on a cell phone. Officers asked defendant to get on the floor, frisked him, seized a film cannister, and handcuffed him. They found the package just delivered opened on the kitchen stove, surrounded by broken pieces of the picture frames.

Defendant was advised of his *Miranda* rights and verbally waived them. In response to an officer's question whether the package had contained opium, defendant told the officers that he had been expecting a package of pictures from his brother-in-law, Ramin Sarmist ("Sarmist"), who lived in Iran. Defendant explained that he had previously received packages from Sarmist containing pictures and rugs for resale in the Charlotte area. Defendant stated he had not expected Sarmist to send opium, although he acknowledged having used opium before. Defendant admitted that when he opened the package this time from Sarmist, he realized from its odor that it contained opium. Defendant claimed that when he heard a knock on the door, he thought his wife and child were coming home, and he hid the opium in the bedroom so that his child would not see it. Defendant then directed the officers to a trash bag of clothes under a desk in a bedroom. After searching the trash bag, the officers found an United States Customs' evidence bag, containing 381.93 grams of opium.

Defendant suggested to the officers that a telephone call to Sarmist could exonerate him. The officers allowed defendant to make the call, believing defendant would incriminate himself. After the telephone conversation, defendant reported to the officers that Sarmist did not admit to sending the opium.

The conversation, which was conducted in Farsi, was taped and subsequently translated. In the call, Sarmist told defendant that he had taken two rugs and one picture to the Teheran Post Office to be boxed and mailed. Defendant told Sarmist that the package had instead contained two pictures and "something unreal." Sarmist suggested that someone was trying to frame defendant and said he would find out who prepared and sent the package.

In addition to the opium in the United States Customs bag, the officers determined that the film canister seized from defendant contained trace amounts of opium. While searching defendant's vehicle, the officers also found a safety pin or "wire stem" coated in opium, $1,160.00 in cash, and scales normally used to weigh drugs in the vehicle's console. Officers discovered empty mailing boxes in the carport of defendant's house that were addressed similarly to the one containing the opium.

Defendant was indicted with trafficking in drugs, possession of drug paraphernalia, and maintaining a dwelling for the purpose of keeping controlled substances. At trial, defendant did not offer any evidence. On 15 August 2003, a jury found defendant guilty of traf-

ficking in opium by possessing twenty-eight grams or more and possessing drug paraphernalia, but acquitted defendant on the maintaining a dwelling charge. Defendant was sentenced to a term of 225 to 279 months for the trafficking conviction and forty-five days for the possession of paraphernalia conviction.

## II. Issues

Defendant argues that the trial court erred by: (1) denying his motion to suppress due to false statements contained in an affidavit supporting an application for a search warrant; (2) denying defendant's motion to dismiss; (3) allowing a witness to testify regarding defendant's request for an attorney; and (4) denying his motion for a mistrial or, in the alternative, his request for a curative instruction when the State displayed information outside the record during closing arguments.

## III. Denial of Motion to Suppress

[1] Defendant assigns error to the trial court's denial of his motion to suppress. Defendant argues that Agent McDavid's affidavit submitted in support of the application for an anticipatory search warrant was fatally flawed because it contained material falsehoods and was made in bad faith in violation of *Franks v. Delaware*, 438 U.S. 154, 165, 57 L. Ed. 2d 667, 678 (1978). We disagree.

In applying *Franks*, our Supreme Court held, "[i]t is elementary that the Fourth Amendment's requirement of a factual showing sufficient to constitute 'probable cause' anticipates a truthful showing of facts." *State v. Fernandez*, 346 N.C. 1, 13, 484 S.E.2d 350, 358 (1997). If the defendant shows in support of an application for a search warrant that: (1) the affiant knowingly or with reckless disregard for the truth made false statements; and (2) the false statements are necessary to the finding of probable cause, then "the warrant is rendered void, and evidence obtained thereby is inadmissible . . . ." *Id.*

Defendant argues that his motion to suppress should have been granted under *Franks* and *Fernandez* because Agent McDavid's testimony at trial established that statements in his affidavit supporting the application for the search warrant were false. Agent McDavid's affidavit stated in pertinent part:

Customs Inspector Gattulli opened the parcel and found it to contain two large decorative plaques. Inspector Gattulli observed that the pictures were unusually thick and coated with fiberglass.

The Inspector probed through tape on the picture, the probe revealed a black substance contained within. The substance was field tested . . . to be opium. The opium was estimated to be 412 grams. The opium was kept within the picture to maintain the integrity of the parcel.

At trial, Agent McDavid testified that the customs inspectors in New York, told him the box being sent to him in Charlotte contained pictures and approximately 412 grams of opium. He denied the inspectors told him what they did with the pictures and the opium before they sent the package to him.

Defendant's showing that an affidavit contains false statements standing alone is not sufficient to meet the showing required by *Franks*. 438 U.S. at 165,̓ 57 L. Ed. 2d at 678. We need not decide whether defendant sufficiently established knowing or reckless falsehoods because defendant has failed to demonstrate that any false statements were material. If a defendant meets his burden under *Franks* and *Fernandez*, the "false information must be then set aside." *State v. Severn*, 130 N.C. App. 319, 322-23, 502 S.E.2d 882, 884 (1998). At that point, the court must determine whether the affidavit's remaining content is sufficient to establish probable cause. *Id.* at 323, 502 S.E.2d at 884. If probable cause does not exist without the false statements, then " 'the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.' " *Id.* (quoting *Franks*, 438 U.S. at 156, 57 L. Ed. 2d at 672).

This case involves an anticipatory search warrant and our analysis of the affidavit is slightly different. We recently explained, "[a]n anticipatory search warrant, by definition, is 'not based on present probable cause, but on the expectancy that, at some point in the future[,] probable cause will exist.' " *State v. Baldwin*, 161 N.C. App. 382, 387, 588 S.E.2d 497, 502 (2003) (quoting *State v. Smith*, 124 N.C. App. 565, 571, 478 S.E.2d 237, 241 (1996)). This Court held in *Smith*,

'affidavits supporting the application for an anticipatory warrant must show [on their face], not only that the agent believes a delivery of contraband is going to occur, but also *how* he has obtained this belief, how reliable his sources are, and what part government agents will play in the delivery.'

124 N.C. App. at 573, 478 S.E.2d at 242 (quoting *United States v. Garcia*, 882 F.2d 699, 703 (2d Cir. 1989)).

When the allegedly false statements contained in Agent McDavid's affidavit are disregarded, the affidavit indicates: (1) customs agents in New York intercepted a parcel addressed to "M. Rashidi" at 2408 Margaret Wallace Road, Matthews, North Carolina; (2) the agents opened the parcel and found approximately 412 grams of opium; (3) the agents forwarded the parcel to Agent McDavid by registered mail for enforcement action; (4) Agent McDavid confirmed through Division of Motor Vehicles' records that a Mousad Rashidi resided at the Matthews address written on the parcel; (5) that an United States Postal Inspector would attempt to deliver the parcel to defendant at the address of "2408 Margaret Wallace Rd." on or about 16 November 1999; and (6) the officers would execute the search only after the parcel was taken into the residence and several minutes had elapsed in order to allow the parcel to be opened. Without the allegedly false statements defendant complains of, the other statements were sufficient under *Smith* to support the issuance of an anticipatory search warrant. The statements to which defendant objects are immaterial and do not void the warrant. This assignment of error is overruled.

## IV. Denial of Motion to Dismiss

[2] Defendant also assigns error to the trial court's denial of his motion to dismiss the charge of trafficking in opium by possession. Defendant argues, "[t]he State failed to prove who put opium in the package, when it was put in, or at whose request." Defendant contends the State offered insufficient evidence that he intended to control the disposition or use of the opium. We disagree.

When considering a motion to dismiss, the trial court must determine whether the State has presented substantial evidence of every essential element of the crime and that the defendant is the perpetrator. *State v. Robinson*, 355 N.C. 320, 336, 561 S.E.2d 245, 255, *cert. denied*, 537 U.S. 1006, 154 L. Ed. 2d 404 (2002). We consider the evidence "in the light most favorable to the State, giving the State the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994), *cert. denied*, 515 U.S. 1135, 132 L. Ed. 2d 818 (1995).

A person is guilty of the Class C felony of trafficking in opium when he "sells, manufactures, delivers, transports, or possesses" twenty-eight grams or more of opium. N.C. Gen. Stat. § 90-95(h)(4) (2003). To prove trafficking by possession, a "defendant's conviction must be based upon his *knowing* possession of the drugs." *State v.*

*Rosario*, 93 N.C. App. 627, 636, 379 S.E.2d 434, 439, *disc. rev. denied*, 325 N.C. 275, 384 S.E.2d 527 (1989). A State cannot obtain a conviction based on drugs being "surreptitiously introduc[ed] . . . into a defendant's residence." *Id.* On the other hand, "[t]he source of the [controlled substance] is immaterial so long as defendant knowingly possessed it." *Id.*

The State was not required to show who placed the opium in the parcel. It was required to show defendant knew or expected that the package contained opium and intended to control its disposition or use. *State v. Harvey*, 281 N.C. 1, 12, 187 S.E.2d 706, 714 (1972) ("An accused's possession of narcotics may be actual or constructive. He has possession of the contraband material within the meaning of the law when he has both the power and intent to control its disposition or use."). The State must show more than the package was addressed to defendant and contained opium, since such proof does not necessarily establish defendant's knowledge of the contents of the package and his intent to exercise control over the opium. *State v. Weems*, 31 N.C. App. 569, 571, 230 S.E.2d 193, 194 (1976) ("Necessarily, power and intent to control the contraband material can exist only when one is aware of its presence."). *See also United States v. Zandi*, 769 F.2d 229, 235 (4th Cir. 1985) (holding, under the analogous federal statute, that the government must prove beyond a reasonable doubt that the recipient of a package had knowledge that it contained a controlled substance to prove possession).

Receipt of a package, without more, is analogous to a person being in proximity to drugs on premises over which he does not have exclusive control. When a person does not have exclusive possession of the place where narcotics are found, "the State must show other incriminating circumstances before constructive possession may be inferred." *State v. Davis*, 325 N.C. 693, 697, 386 S.E.2d 187, 190 (1989) (citation omitted); *see State v. Balsom*, 17 N.C. App. 655, 659, 195 S.E.2d 125, 128 (1973) ("[M]ere proximity to persons or locations with drugs about them is usually insufficient, in the absence of other incriminating circumstances, to convict for possession." (internal quotation marks omitted)).

Reviewing the record in the light most favorable to the State, we hold sufficient evidence was presented to allow a jury to find that defendant knowingly possessed the opium. Defendant received the package addressed to him at his residence and, before or shortly after the officers announced their presence, hid the opium contained in an United States Customs bag in a trash bag of clothes in a bedroom.

This evidence supports an inference of knowing possession. *See Rosario*, 93 N.C. App. at 638, 379 S.E.2d at 440 (evidence that the defendant took delivery of a package from a courier, placed it in his freezer, and then put it in a trash can when he learned that police were in the area provided evidence that defendant "possessed the package and knew what it contained").

This delivery to defendant was not a random, unexpected occurrence. Officers found multiple, similarly addressed packages in defendant's carport and defendant admitted that he had expected to receive a package from his brother-in-law containing a picture.

Defendant only argues that he did not expect for those pictures to contain opium. The State also offered evidence of other incriminating circumstances that would permit a jury to conclude otherwise. Defendant admitted that he had used opium and officers found a film cannister containing traces of opium in his front pocket. In addition, during a search of defendant's Mustang, officers found in its console hand-held scales of a type frequently used to weigh drugs, a safety pin or "wire stem" coated in opium, and $1,160.00 in cash.

Prior precedents have determined such evidence to be sufficient to allow a jury to find constructive possession. *See, e.g., State v. Jackson*, 137 N.C. App. 570, 573-74, 529 S.E.2d 253, 256 (2000) (finding sufficient evidence of possession to support a trafficking in cocaine charge based on cocaine located in the bathroom of a motel room inhabited by three people when the defendant had $800.00 in cash and 2.22 grams of cocaine on his person); *State v. Givens*, 95 N.C. App. 72, 78, 381 S.E.2d 869, 872 (1989) (holding evidence was sufficient to establish constructive possession when the defendant exercised some control over the premises where the cocaine was found and the defendant arrived at the location with cocaine on his person and, when searched, had a set of scales in his pocket); *Rosario*, 93 N.C. App. at 638, 379 S.E.2d at 440 (holding that evidence of the defendant's receipt and hiding of a package ultimately found to contain cocaine together with: (1) his possession of smaller bags of cocaine, cocaine grinders, and scales; and (2) testimony that defendant sold cocaine was sufficient to support an inference of constructive possession). The trial court did not err in denying defendant's motion to dismiss. This assignment of error is overruled.

V.  Allowing Testimony Concerning Invocation of Right to Counsel

[3] Defendant contends the trial court erred by allowing the State to question Agent McDavid about defendant's invocation of his right to

counsel, and this error violated his constitutional rights. Defendant argues this error merits a new trial. We disagree.

It is well-established that "a defendant's exercise of his constitutionally protected rights to remain silent and to request counsel during interrogation may not be used against him at trial." *State v. Elmore*, 337 N.C. 789, 792, 448 S.E.2d 501, 502 (1994) (citation omitted). "[A] defendant *must* be permitted to invoke [his Fifth Amendment right to counsel] with the assurance that he will not later suffer adverse consequences for having done so." *State v. Ladd*, 308 N.C. 272, 283-84, 302 S.E.2d 164, 172 (1983). Allowing testimony concerning defendant's invocation of right to counsel can be error on the trial court's part. *See id.* at 284, 302 S.E.2d at 172 (allowing testimony of the defendant's invocation of right to counsel found to be error).

Presuming the trial court erred by allowing the testimony, a two part analysis is used to decide whether defendant is entitled to a new trial on the basis of this error. *See id.* (holding first that a constitutional violation had occurred and then conducting analysis to determine if it was harmless beyond a reasonable doubt); *Elmore*, 337 N.C. at 792, 448 S.E.2d at 502 (conducting the same analysis). First, the court must determine if a constitutional violation has occurred. The burden of proof is on the defendant. N.C. Gen. Stat. § 15A-1443(a); *see Ladd*, 308 N.C. at 284, 302 S.E.2d at 172. Second, presuming the court finds a constitutional violation, the State has the burden of proving the error was harmless beyond a reasonable doubt. If the State fails to meet this burden, the violation is deemed prejudicial and a new trial is required. N.C. Gen. Stat. § 15A-1443(b); *see Elmore*, 337 N.C. at 792, 448 S.E.2d at 502.

Defendant argues that the trial court erred when it allowed Agent McDavid to answer questions regarding whether defendant requested an attorney. When the prosecutor was questioning Agent McDavid about what happened at the residence and what defendant told the officers, he further asked:

> Q: . . . At anytime, talking about all these statements the defendant made, and your conversation with the defendant, at anytime during any of those conversations, did he ever ask for a lawyer to be present?
>
> MR. LEE: Objection.
>
> THE COURT: Overruled.
>
> THE WITNESS: Yes, he did.

Q: . . . And when did he tell you, or tell someone that he wanted a lawyer to be present?

A: I was conducting a search of the house—

MR. LEE: Objection. Request to be heard, Your Honor.

[Bench conference.]

THE COURT: That objection is overruled.

Q: . . . Inspector McDavid, when the defendant invoked his rights to an attorney, was he asked anymore questions about this incident?

A: No, he wasn't.

These three questions thus specifically reference defendant's invocation of his right to an attorney. Presuming *arguendo*, as the court did in *Elmore*, that defendant's constitutional rights were violated, we must consider only whether the State has shown this error to be harmless beyond a reasonable doubt. 337 N.C. at 792, 448 S.E.2d at 502.

"To find harmless error beyond a reasonable doubt, we must be convinced that there is no reasonable possibility that the admission of this evidence might have contributed to the conviction." *Ladd*, 308 N.C. at 284, 302 S.E.2d at 172 (citing *Fahy v. Connecticut*, 375 U.S. 85, 86-87, 11 L. Ed. 2d 171, 173 (1963); *State v. Castor*, 285 N.C. 286, 292, 204 S.E.2d 848, 853 (1974)). In deciding whether a reasonable possibility exists that testimony regarding a defendant's request for counsel contributed to his conviction, the lynchpin in our analysis is whether other overwhelming evidence of guilt was presented against defendant. *See Ladd*, 308 N.C. at 284-85, 302 S.E.2d at 172 (holding that the overwhelming nature of other evidence the State had arrayed against the defendant sufficient to prove that admission of the defendant's request for counsel was harmless beyond a reasonable doubt); *see also Elmore*, 337 N.C. at 793, 448 S.E.2d at 503 (listing overwhelming nature of evidence the State had compiled against the defendant as a major reason in holding that admission of the defendant's request for counsel was harmless beyond a reasonable doubt). Other factors the Court in *Elmore* considered were: (1) whether the reference was volunteered by a witness or elicited by counsel; (2) whether the State emphasized that the defendant had invoked his right to counsel; and (3) whether the State sought to cap-

italize on the defendant's invocation of his right. 337 N.C. at 792-93, 448 S.E.2d at 503.

As noted, defendant was found to be in possession of 381.93 grams of opium. His vehicle contained drug paraphernalia, trace amounts of opium, and a large quantity of cash. He possessed a film canister on his person which contained trace amounts of opium. He attempted to hide the opium within moments of receiving the package. Officers also found similarly addressed packages in defendant's carport, indicating that this drug delivery was not an isolated incident.

All these factors show other overwhelming evidence for defendant's guilt of drug trafficking. The State needed only to prove knowing possession of more than twenty-eight grams of opium. By showing defendant possessed the opium and attempted to hide it, the State's evidence left no reasonable doubt that defendant knowingly possessed more than thirteen times the statutory amount. *See Rosario*, 93 N.C. App. at 638, 379 S.E.2d at 440 (showing the defendant received a package containing a controlled substance and then hid it upon learning that the police were nearby proved "that defendant actually possessed the package and knew what it contained").

The State made no reference to defendant's invocation of his right to counsel in closing arguments. That fact distinguishes this case from those defendant cites as authority for ordering a new trial. *See, e.g., State v. Reid*, 334 N.C. 551, 557, 434 S.E.2d 193, 197 (1993) (holding that the State's direct reference in closing argument to the defendant's failure to testify and the trial court's refusal to give a curative order were sufficient to mandate a new trial). No other witnesses were questioned about defendant's invocation and defendant was not cross-examined about invoking his constitutional rights. This case differs from *Elmore* in that the State asked Agent McDavid directly whether or not defendant had invoked his right to counsel. This difference, standing alone, is not sufficient to overcome other overwhelming evidence of guilt to grant defendant a new trial.

The dissenting opinion disagrees with our assessment of "the evidence as overwhelming" against defendant. To support this assertion, it states defendant, in hiding the opium before officers entered his home, was acting as any other person would if he or she "unexpectedly receive[d] contraband in a United States Customs bag and hear[d] the police knocking at the door." However, defendant told

**STATE v. RASHIDI**

[172 N.C. App. 628 (2005)]

officers he hid the opium in the bedroom because he believed his wife and child were outside, not the police.

Due to other overwhelming evidence of defendant's guilt, the other factors listed, and presuming the trial court erred, we hold such error was harmless beyond a reasonable doubt.

## VI.  Denial of Motion for Mistrial or Curative Instruction

[4] Defendant also contends that the trial court abused its discretion by not granting a motion for mistrial or, alternatively, by not issuing a curative order after the State placed two 8½ by 11 inch sized displays in front of the jury before its closing argument. We disagree.

Following the charge conference, defense counsel stated:

And again, I just want to make it clear, that as I recall the facts, the only evidence of flight is, he had a court date. He didn't show up. He was arrested later, that's it. There was no reference in the record about Canada or anything else. We would ask the State to be mindful of that when it makes its closing arguments and stick to the facts of the record.

The State responded that he would "be mindful" and that he "would not intend to introduce" any information on this subject unless defense counsel put forth evidence of defendant's leaving the country and his reasons why. Defendant subsequently chose not to present any evidence.

During the State's closing argument, the prosecutor displayed to the jury a number of typewritten panels summarizing its case. The display was placed six feet in front of the jury box so that all the jurors could view the material. Panels 15 and 16—which were each on 8½ by 11 inch paper and printed in a 48-point font—stated:

15. D went to Canada when he KNEW he had a trial court date back on 6/11/01—he knew that he needed to get out of the US b/c he knew he was guilty.

16. D didn't return to the US and turn himself in, he hid (sound familiar?)—Officer Kolbay had to find him and arrest him to make sure he would make his next court date.

Defendant objected on the grounds that the material in panels 15 and 16 was not supported by any evidence presented at the trial. Since the closing argument was not recorded in the transcript, we do not know exactly how long the panels remained before the jury. The State con-

tends that the panels remained visible for only thirty seconds. When defendant placed his objection on the record, he requested a mistrial or, in the alternative, a curative instruction. The trial court denied both requests.

It is well-established that counsel's closing argument must "be constructed from fair inferences drawn only from evidence properly admitted at trial." *State v. Jones,* 355 N.C. 117, 135, 558 S.E.2d 97, 108 (2002); *see* N.C. Gen. Stat. § 15A-1230(a) (2003) ("During a closing argument to the jury an attorney may not . . . make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice."). "During closing arguments, attorneys are given wide latitude to pursue their case." *State v. Prevatte,* 356 N.C. 178, 237, 570 S.E.2d 440, 473 (2002), *cert. denied,* 538 U.S. 986, 155 L. Ed. 2d 681 (2003) (citation omitted). But, "wide latitude has its limits." *Jones,* 355 N.C. at 129, 558 S.E.2d at 105 (internal quotation marks omitted). A trial court's ruling on improper closing arguments timely objected to is reviewed for abuse of discretion. *Id.* at 131, 558 S.E.2d at 106. Under such a level of review, "[a] prosecutor's improper remark during closing arguments does not justify a new trial unless it is so grave that it prejudiced the result of the trial." *State v. Glasco,* 160 N.C. App. 150, 158, 585 S.E.2d 257, 263 (citing *State v. Westbrooks,* 345 N.C. 43, 70, 478 S.E.2d 483, 500 (1996)), *disc. rev. denied,* 357 N.C. 580, 589 S.E.2d 356 (2003).

The State concedes the information shown on the disputed panels was outside of the record. Instead, the State argues that the display did not amount to a "spoken" argument by counsel because it was placed in front of the jury only momentarily. The State also asserts that counsel never spoke to the jury about the information on the panels. Assuming *arguendo* that the display did constitute a "spoken" argument or remark, the inquiry becomes whether this error prejudiced the result of defendant's trial.

The disputed displays were apparently visible to the jury for less than a minute. The State said that they were visible to the jury for just thirty seconds and defense counsel does not argue otherwise. The contested displays consisted of two 8½ by 11 inch paper panels placed in front of the jury before the State began its closing argument. The prosecutor never commented on them to the jury. The State removed them immediately after defendant objected to their content.

In *Glasco,* this Court confronted remarkably similar facts. 160 N.C. App. at 158, 585 S.E.2d at 263. There, the State twice declared in

its closing argument that the defendant was fleeing the scene of the crime. *Id.* The evidence only showed that the defendant was seen jumping over "a nearby fence." *Id.* The trial court refused to grant a motion for mistrial and refused to issue a flight instruction. *Id.* This Court remonstrated the State for twice mentioning the defendant's alleged flight, but we declined to order a new trial. We distinguished the case from others where the courts had found prejudicial error consistent with the abuse of discretion level of review. *Id.* at 158-59, 585 S.E.2d at 263-64; *see, e.g., State v. Allen*, 353 N.C. 504, 508-11, 546 S.E.2d 372, 374-76 (2001) (new trial granted where the prosecutor told the jury during closing arguments that the trial court found some evidence "trustworthy and reliable;" disclosing legal opinion or ruling of trial court on "admissibility and credibility of evidence" deemed prejudicial); *State v. Jordan*, 149 N.C. App. 838, 843, 562 S.E.2d 465, 468 (2002) (Mistrial granted where the prosecutor "thoroughly undermined [the defendant's] defense by casting unsupported doubt on counsel's credibility and erroneously painting defendant's defense as purely obstructionist."). In *Glasco*, this Court also found a lack of prejudicial error from the fact that the jury was discerning enough "to find defendant not guilty of discharging a firearm into occupied property, while finding him guilty of possessing a firearm." 160 N.C. App. at 159, 585 S.E.2d at 264. Here, the jury was discerning enough to convict defendant of the possession charge, while acquitting him of maintaining a dwelling for the purpose of keeping controlled substances.

Here, as in *Glasco*, the State should not have set up the displays containing assertions not in evidence. We admonish the State's attorney for placing these panels before the jury, particularly after defense counsel raised the issue and the State's attorney agreed he would "be mindful" not to argue defendant's flight to the jury. Defendant, however, failed to show how the error prejudiced the result of the trial. Having held that the trial court did not abuse its discretion by denying defendant's motion for mistrial, we also hold the court did not abuse its discretion by denying defendant the lesser remedy of a curative instruction.

The dissenting opinion would grant a new trial because "a written display persistently confronting a jury may be more prejudicial than a fleeting remark once voiced, but not repeated." No evidence shows these displays were "persistently confronting" the jury when they were two of sixteen 8½ by 11 paper sized panels were visible for less than a minute. The displays, therefore, were not more prejudicial than a "fleeting remark once voiced, but not repeated."

VII. Conclusion

We hold that the trial court did not err in denying defendant's motion to suppress based upon allegedly false information contained in Agent McDavid's affidavit supporting the anticipatory search warrant for defendant's residence. We hold that the trial court did not err in denying defendant's motion to dismiss. The State produced sufficient evidence to prove the necessary elements of opium trafficking and possession of drug paraphernalia. Presuming the trial court erred in allowing testimony about defendant's invocation of his right to counsel, we hold any error was not prejudicial due to the overwhelming nature of the other evidence against defendant. We hold that the trial court did not abuse its discretion by denying defendant's motion for mistrial or, alternatively, for a curative instruction. Defendant received a fair trial free from prejudicial errors he assigned and argued.

The dissenting opinion declines to address the issue of whether denial of the alternative motion for a curative instruction merits a new trial because it would hold "in light of the improper closing argument, the State cannot demonstrate that its questions regarding defendant's exercise of his Fifth Amendment rights were harmless beyond a reasonable doubt." The dissenting opinion would award a new trial by linking these two errors under the rubric "post-arrest" conduct. Although the dissenting opinion implies the combination of an error not harmless beyond a reasonable doubt and a non-prejudicial error justifies a new trial, no authority is cited for that proposition. We do not perceive a connection between these two alleged errors sufficient to warrant a new trial.

No prejudicial error.

Judge McGEE concurs.

Judge GEER concurs in part and dissents in part.

GEER, Judge, concurring in part and dissenting in part.

I agree with the majority's analysis regarding the denial of defendant's motion to suppress and his motion to dismiss. I respectfully dissent, however, because I believe the trial court erred in not giving a curative instruction when the State presented information outside the record during closing arguments and by allowing testimony regarding

**STATE v. RASHIDI**

[172 N.C. App. 628 (2005)]

defendant's request for an attorney. I would hold that the combination of these errors mandates a new trial.

Defendant argues that the trial court erred when it allowed McDavid to answer questions as to whether defendant requested an attorney. When the prosecutor was questioning McDavid about what happened at the residence and what defendant told the officers, he further asked:

Q: . . . At anytime, talking about all these statements the defendant made, and your conversation with the defendant, at anytime during any of those conversations, did he ever ask for a lawyer to be present?

MR. LEE: Objection.

THE COURT: Overruled.

THE WITNESS: Yes, he did .

Q: . . . And when did he tell you, or tell someone that he wanted a lawyer to be present?

A: I was conducting a search of the house

MR. LEE: Objection. Request to be heard, Your Honor.

[Bench conference.]

THE COURT: That objection is overruled.

Q: . . . Inspector McDavid, when the defendant invoked his rights to an attorney, was he asked anymore questions about this incident?

A: No, he wasn't.

These three questions thus specifically reference defendant's invocation of his right to an attorney.

It is error to allow questions regarding a defendant's request for an attorney because

[b]y giving the *Miranda* warnings, the police officers indicated to defendant that they were prepared to recognize his right to the presence of an attorney should he choose to exercise it. Therefore, we conclude that the words chosen by defendant to invoke this constitutional privilege should not have been admitted into evidence against him.

*State v. Ladd,* 308 N.C. 272, 284, 302 S.E.2d 164, 172 (1983). Yet, in this case, the trial court allowed the prosecutor to ask three times about defendant's request for an attorney.

I believe that allowing the State's questions, over defendant's objections, regarding defendant's invocation of his right to counsel violated defendant's Fifth Amendment rights. *See State v. Jones,* 146 N.C. App. 394, 399, 553 S.E.2d 79, 82 (2001) (holding under *Ladd* that it was error when the prosecutor questioned a detective regarding the defendant's request for counsel), *cert. denied,* 355 N.C. 754, 566 S.E.2d 83 (2002). Under N.C. Gen. Stat. § 15A-1443(b) (2003), this violation is deemed prejudicial unless the State demonstrates *beyond a reasonable doubt* that this error was harmless. *Ladd,* 308 N.C. at 284, 302 S.E.2d at 172 (holding that the defendant was "entitled to a new trial unless we determine that the erroneous admission of this evidence was harmless beyond a reasonable doubt"). In my view, the majority errs by considering the harm caused by these questions in isolation and not assessing it in conjunction with the harm caused by the State's closing argument.

As the majority explains, defense counsel specifically noted prior to closing arguments that the record contained no evidence of flight apart from defendant's having failed to appear at a court date. He stressed specifically that there was no evidence of defendant's having fled to Canada. The prosecutor assured defense counsel and the trial court that he would "be mindful" and that he "would not intend to introduce" any information on this subject unless defendant's counsel put forth evidence of defendant's leaving the country and his reasons why. Moments after this discussion, even though defendant had presented no evidence, the prosecutor displayed to the jury typewritten panels, stating:

15. D went to Canada when he KNEW he had a trial court dated back on 6/11/01—he knew that he needed to get out of the US b/c he knew he was guilty

16. D didn't return to the US and turn himself in, he hid (sound familiar?)—Officer Kolbay had to find him and arrest him to make sure he would make his next court date

It is undisputed that the material contained in panels 15 and 16 went outside the record.

The State suggests that the typewritten material was not error because our appellate courts' prior opinions have dealt only with

spoken comments from the prosecutor and not written displays in front of the jury. This supposed distinction is immaterial. Indeed, a written display persistently confronting a jury may be more prejudicial than a fleeting remark once voiced, but not repeated. *See* 2 Kenneth S. Broun, *Brandis & Broun on North Carolina Evidence* § 252, at 298-99 (6th ed. 2004) (observing with respect to illustrative evidence that jurors "are quite likely to be influenced by what they see, without being overly concerned about whether it precisely illustrates what they hear").

I agree with the majority that defendant has not shown that the trial court abused its discretion in denying the motion for a mistrial. Nevertheless, because the court refused to issue a curative instruction directing the jury to disregard the information on the panels, the jury may well have considered defendant's flight to Canada and his subsequent hiding in reaching its verdict. The panels were before the jury long enough to be read, as demonstrated by the fact defendant's counsel had time to read them and object.

It appears from the record that the trial court attempted to remedy the error by refusing to give an instruction on flight. Unless, however, instructed not to do so, a jury could conclude on its own, as a matter of common sense, that the fact defendant went to Canada and hid after being charged suggested he was guilty. The only method by which the court could have fully cured the error was to specifically tell the jury that they were shown information that was not part of the evidence and to instruct the jurors to disregard the panels. *See, e.g.*, *State v. Lake*, 305 N.C. 143, 150-51, 286 S.E.2d 541, 545 (1982) (when the district attorney tried to discredit witnesses with facts outside of the record, the court did not abuse its discretion in failing to grant a mistrial because its "curative instruction adequately averted any possible prejudice to defendant"); *State v. Jordan*, 149 N.C. App. 838, 844, 562 S.E.2d 465, 468 (2002) (holding that the trial court erred in not granting a mistrial when the court did not instruct the jury to disregard the prosecutor's improper comments); *State v. Riley*, 128 N.C. App. 265, 270, 495 S.E.2d 181, 185 (1998) (holding that where evidence against the defendant was not overwhelming and the prosecutor made comments "concerning Defendant's failure to testify," a new trial was required because the error was "not timely corrected by the trial court").

In contrast to the majority, I would not consider whether the failure to give the curative instruction standing alone was harmless

error[1] since I believe, in light of the improper closing argument, the State cannot demonstrate that its questions regarding defendant's exercise of his Fifth Amendment rights were harmless beyond a reasonable doubt. When considering whether the mention of defendant's post-*Miranda* request for an attorney is harmless beyond a reasonable doubt, our courts have looked at: (1) whether the reference was made by the witness or in a question by counsel; (2) whether the State emphasized or made additional comments or references to the defendant invoking his constitutional rights; (3) whether the State attempted to capitalize on defendant's request; and (4) whether the evidence against the defendant was overwhelming. *State v. Elmore*, 337 N.C. 789, 792-93, 448 S.E.2d 501, 503-04 (1994).

In this case, a witness did not simply mention defendant's request for an attorney in passing. Instead, the State asked three separate questions of McDavid that elicited three times the fact that defendant had asked to have a lawyer present, causing all questioning to cease. The State on appeal has offered no reason that the prosecutor would ask three such questions in a row other than to hammer home the fact that defendant had asked to have a lawyer present while the officers were searching his house and car (where incriminating evidence was found). The jury could readily conclude that this request suggested guilt. Then, in the closing argument, the State again focused the jury's attention on defendant's post-arrest conduct. The improper panels indicated that defendant had fled to Canada and hid because, according to the panel, "he knew that he needed to get out of the US b/c he knew he was guilty."

I disagree with the majority's characterization of the evidence in this case as overwhelming. No one with personal knowledge testified regarding what the package looked like in New York, where the opium came from, or how it ended up in a United States Customs bag. Defendant's conduct in hiding the opium is not necessarily evidence of guilt since someone who unexpectedly receives contraband in a United States Customs bag and hears the police knocking at the door would likely behave in identical fashion. Although the officers uncovered additional incriminating material in defendant's car, the jury apparently did not view that evidence as compelling since the jury found defendant not guilty of the charge of maintaining a dwelling for the purpose of keeping controlled substances. The jury could well

---

1. *See State v. Westbrooks*, 345 N.C. 43, 70, 478 S.E.2d 483, 500 (1996) (holding that an improper remark made during a closing argument does not justify a new trial unless defendant can show prejudice).

have turned to defendant's post-arrest behavior—including the request for a lawyer as the search progressed and the flight to Canada—and decided that this behavior tipped the scales as to guilt on the trafficking charge. As a result, "we cannot say that there is or can be no reasonable possibility that a different result would have been reached" if these errors had not been made. *State v. Allen*, 353 N.C. 504, 511, 546 S.E.2d 372, 376 (2001). Accordingly, I would hold that defendant is entitled to a new trial.

