STROUD, Judge, concurring in part and dissenting in part.
I concur with the majority opinion on the first, second, and fourth issues addressed but dissent based upon the third issue. Because I believe that the State has failed to demonstrate that the erroneous admission of defendant's videotaped statement was harmless beyond a reasonable doubt, I would grant defendant a new trial.
*554 The majority found that the trial court erred in denying defendant's motion to suppress, and I agree. Yet the majority finds that this error was harmless beyond a reasonable doubt based upon the fact that in the videotaped statement, defendant did not "confess" to the crime and in light of the other evidence, including physical evidence, of defendant's guilt.
To find harmless error beyond a reasonable doubt, we must be convinced that there is no reasonable possibility that the admission of this evidence might have contributed to the conviction. In deciding whether a reasonable possibility exists that testimony regarding a defendant's request for counsel contributed to his conviction, the lynchpin in our analysis is whether other overwhelming evidence of guilt was presented against defendant.
State v. Rashidi, 172 N.C.App. 628, 639, 617 S.E.2d 68, 76 (citations and quotation marks omitted), aff'd per curiam, 360 N.C. 166, 622 S.E.2d 493 (2005).
I agree that the evidence against defendant is strong, but I am not convinced that the State has demonstrated that the error was harmless beyond a reasonable doubt. The first jury considered the same physical evidence, the same witnesses, and the same jail phone conversations as the second jury but was unable to reach a verdict on any charge other than the assault on a female charge, so they did have doubt as to the other charges. The second jury considered the same evidence but also considered the erroneously admitted videotape and defendant's own testimony. Defendant argues that he did not testify at the first trial, but was "all but forced" to testify at the second trial "to clarify any unresolved factual issues created by the videotape." The majority views the effect of the erroneous admission of the videotaped interview on defendant's decision to testify as "pure speculation[,]" but given the first jury's inability to reach a verdict on the relevant charges, I disagree. I also note that even the second jury did not convict defendant of all of the charges against him, as they found him not guilty of the second-degree sexual offense, despite the "overwhelming" evidence as to all of the charges. And because defendant testified in the second trial, the State was able to impeach him with evidence of his prior convictions. Only the second jury learned of these convictions, and although the jury was instructed to consider them only as to defendant's credibility, these convictions had the potential to be particularly prejudicial. One of the prior convictions was defendant's 8 August 2013 conviction of assault on a female, which arose from the same incident with T.H., since this was the one charge upon which the first jury was able to reach a verdict. The second *555 jury also learned that he had been convicted of assault on a female on *341 30 June 2004 and driving while impaired on 3 June 2005.
The majority notes that at the second trial, defendant's credibility had already been "significantly impugned" even before the jury heard evidence of his prior convictions, referring to his cross-examination regarding inconsistencies between what he told Detective Wenhart and his trial testimony. To me, this argument seems circular. Defendant would not have been testifying at all but for the erroneous admission of the evidence, and he would not have been subject to cross-examination upon the statement taken in violation of his Miranda rights if he had not testified. I also disagree that this cross-examination "significantly impugned" defendant, since the questioning simply pointed out minor variations between what defendant told Detective Wenhart and what defendant said in court. Defendant also testified that he was intoxicated when he was talking to the detective. In fact, defendant's apparent confusion and lack of demonstrated understanding of his Miranda rights-perhaps arising at least in part from his intoxication-at this interview are part of the reason that the majority holds that defendant did not understand or intelligently waive his Miranda rights. Holding that the use of defendant's statement, which should have been suppressed, was not harmless beyond a reasonable doubt, and then relying upon the very same evidence to demonstrate that defendant had already been impeached, so that more impeaching evidence would not further harm him, seems logically inconsistent to me. This impeachment came from the very statement to Detective Wenhart that defendant had sought unsuccessfully before the trial court to suppress-and the majority here has held should have been suppressed-and which was the reason that defendant believed that he must testify in the second trial. In other words, but for the erroneous admission of the statement evidence, none of the impeaching evidence, neither the cross-examination upon defendant's erroneously admitted statement nor the prior convictions, would have been considered by the second jury. In this situation, I am simply not "convinced" that "there is no reasonable possibility that the admission of this evidence might have contributed to the conviction[s]." See id., 617 S.E.2d at 76. I therefore concur in part and dissent in part, and would grant defendant a new trial.